508 P.2d 1283 (1973)
84 N.M. 7961
Frank M. STANDHARDT, Defendant-Appellee and Cross-Appellant,
v.
FLINTKOTE COMPANY, also known as pioneer Flintkote Company, Defendant-Appellant and Cross-Appellee.
No. 9292.
Supreme Court of New Mexico.
April 13, 1973.
*1284 William J. Heck, Hobbs, for appellant.
Atwood, Malone, Mann & Cooter, Robert A. Johnson, Roswell, for appellee.

OPINION
MONTOYA, Justice.
This cause comes before us for the second time on appeal. Initially, the plaintiff Board of Education, School District No. 16, Artesia (School Board), filed its complaint, subsequently amended, in the District Court of Chaves County, against W.R. Bauske, d/b/a W.R. Bauske and Company (Bauske); his bonding company, United States Fidelity and Guaranty Company (Fidelity), for breach of contract for the construction of a school building; against Frank M. Standhardt (Standhardt), the general architect, for breach of architectural contract and negligence; against Hamilton Roofing Company (Hamilton), the roofing contractor for breach of its roofing guarantee; and against the Flintkote Company (Flintkote), the manufacturer of a monoform roofing compound used by Hamilton, to recover *1285 damages from Flintkote for breach of express and implied warranties. Standhardt filed a third party complaint against Flintkote seeking indemnity. After a trial on the merits, judgment was entered dismissing the School Board's complaint against Bauske and Hamilton. Standhardt's third party complaint was also dismissed. The trial court entered judgment for the School Board against Standhardt and Flintkote, jointly and severally, in the amount of $34,600, plus interest. Defendants' appeal from that judgment was considered by this court in Board of Education, School District 16 v. Standhardt, 80 N.M. 543, 458 P.2d 795 (1969), to which reference is made for a more complete statement of facts and issues involved in the prior appeal. In that case, we affirmed the judgment in favor of the School Board against Standhardt, but reversed the School Board's judgment against Flintkote. We also reinstated the third party complaint of Standhardt against Flintkote, and remanded for a trial of the issues raised by the third party complaint.
On remand, the trial court entered judgment for Standhardt against Flintkote, based upon contribution in the amount of $25,085, plus interest from the date of judgment. Flintkote appeals this decision. Standhardt, the third party plaintiff, cross-appeals seeking indemnity for $50,170, the full amount awarded the School Board.
At the trial of the issues raised by the third party complaint, the evidence submitted was only one exhibit showing payment of the judgment by Standhardt. The trial court heard a motion to dismiss the third party complaint, which motion was overruled. The trial court then entered its decision to the effect that all previous findings and conclusions left undisturbed by the Supreme Court were still in effect, and readopted the same. The trial court further held that both Standhardt and Flintkote were in pari delicto and joint tortfeasors, and awarded Standhardt judgment for $25,085, or one-half of the sum previously paid by Standhardt.
Flintkote appeals, contending the court erred in entering judgment against Flintkote in favor of Standhardt. Standhardt cross-appeals, seeking indemnity for the full amount of $50,170.
The issues raised in Flintkote's appeal seeking reversal are to the effect that it was not a tortfeasor under the strict products liability rule; that it was under no duty to warn the architect of a possible defect in architect Standhardt's revised plans and specifications; that the acts and omissions of Standhardt were the sole and proximate cause of the damage; that Flintkote cannot be held liable for any breach of warranty or representation because of change in plans and specifications made by the architect; and finally, that there was absence of proof that the damage was proximately caused by a defect in its product.
On the other hand, Standhardt also appeals claiming indemnity from Flintkote, claiming that as the manufacturer and supplier the material furnished did not perform as represented; that he is entitled to judgment against Flintkote on the theory of breach of express as well as implied warranty; and further claims common law liability on the part of Flintkote, asserting the latter was actively negligent; and finally asserts he is entitled to recover under the doctrine of strict liability in tort.
Since, by its action upon remand, the trial court readopted all findings and conclusions previously made and left undisturbed by our prior opinion, we must examine the original findings and conclusions made by the trial court to dispose of the issues on this appeal. The findings that we are concerned with in disposing of this appeal are as follows:
"10. Defendant Standhardt's plans and specifications were faulty in design and defective, insufficient and unsuitable for the purpose for which they were intended insofar as the slab roof and general waterproofing over the main structure of said *1286 school building is concerned. The design and the waterproofing materials specified were insufficient and defective; the same was and is not impervious to the elements and acts of nature and has leaked precipitation since its completion and still continues to do so.
"* * *.
"13. The plans and specifications prepared by defendant Standhardt did not produce a structure reasonably fit for its intended purpose, and designed to keep out rainfall or other precipitation.
"* * *.
"18. The original specifications for the Abo School roof slab provided for a 15 inch monolithic layer of concrete measuring 201 feet in length by 144 feet in width, all without expansion or other joints and laid on top of steel trusses; the specifications, as modified, provided that on top of the monolithic slab would be laid a waterproof type of roofing capable of withstanding a one-foot hydrostatic head of water; on top of the roofing would be laid three inches of insulating material (pumice), and the latter would, in turn, be topped with three inches of concrete, this being the outside or top surface of the school.
"* * *.
"21. During the time defendant Standhardt was preparing the plans and specifications for the Abo School, defendant Flintkote, acting by and through its agents, servants and employees, represented and warranted to defendant Standhardt that the Flintkote Company manufactured and sold a monoform roofing material known as Monofilm Compound CMR/FM 200 and Monoform Glass Roofing Type 1 which, if applied to the Abo Elementary School by Hamilton Roofing Company, would provide proper protection against the elements and make the roof thereof waterproof; that Hamilton was an applicator of said Flintkote product approved by defendant Flintkote; that Flintkote is a company of many years' standing, nationwide in the scope of its business operations, manufacturing a multitude of products from railroad cars to chemicals, and that reliance on the integrity of its products could reasonably be expected.
"22. These representations and warranties of defendant Flintkote were made by duly qualified agents of Flintkote to defendant Standhardt in Roswell, New Mexico.
"23. Relying upon said representations and warranties, the defendant Standhardt provided in the specifications for the Abo School that said Flintkote product above-mentioned be used. The specifications for the use of the Flintkote product on the Abo School, which were prepared by defendant Standhardt, were the specifications recommended by defendant Flintkote and were reviewed and approved by defendant Flintkote prior to the issuance thereof.
"* * *.
"25. Thereafter defendant Hamilton installed said Flintkote product on the Abo School building in strict accordance with the plans and specifications of defendant Standhardt and in strict accordance with the directions and specifications of defendant Flintkote and its agents. An agent of Flintkote, its regional head field man having 33 years' experience with Flintkote, orally authorized Hamilton to omit the use of a primer and use a water spray base prior to the application of the Flintkote product, varying Flintkote's published specifications for use of its material, and this action *1287 taking place in Chaves or Eddy County, New Mexico; this variation was thereafter confirmed by letter.
"26. On September 20, 1961 defendant Standhardt approved work sheets on the concrete slab, submitted by defendant Bauske which changed the specifications from a monolithic slab to a structure containing 12 separate slabs; these separate slabs resulted in several hundred feet of `man-made' cracks along the sides where these separate pours abutted one to the other; each separate pour experienced the usual shrinkage which occurs when fresh concrete hardens and becomes cured; this shrinkage, combined with the expansion and contraction due to daily temperature changes, produced `live continuous joints' between the 12 separate slabs forming the main superstructure over the Abo School.
"27. In making the change from a monolithic slab to 12 separate slabs, defendant Standhardt relied on the sufficiency of defendant Flintkote's waterproofing material and failed to provide for shrinkage and expansion between the slabs and failed to introduce water stops, or expansion joints, or other waterproofing protection to guarantee against leakage through such live, continuous, manmade joints.
"28. Flintkote waterproofing material is not resilient like rubber, in that it will stretch but it will not contract after stretching; it was and is not a suitable material for use over `live continuous joints' in concrete; it probably would have been adequate had the specifications for a monolithic structure been followed, having sufficient integrity to withstand the minute movements inherent in a monolithic design.
"* * *.
"30. Investigation of the cause of the leaks, including the tearing up of a section of the outer and insulating layers down to the Flintkote product, disclosed, among other things, that at the section torn out the Flintkote material adhered to the upper, or insulating, pumice layer rather than to the fifteen-inch slab as was intended; that the use of a water spray rather than a primer was a possible reason for this; furthermore, that most, if not all, of the leaks occurred where the 12 separate pours joined and the Flintkote material had apparently ruptured due to forces of expansion and contraction.
"31. In making the change in the specifications from a monolithic slab to 12 separate slabs, the defendant Standhardt did not rely upon recommendations of defendant Hamilton or any other person but used his own professional judgment.
"32. The agents and employees of defendant Flintkote were at the Abo School at the time the 15-inch structural slab was being poured and knew of the separate pours and slabs being made instead of a monolithic slab; they failed to warn the plaintiff or the defendant Standhardt of the additional problems involved in the expansion and contraction by reason of the twelve pours being made and that the Flintkote monoform product would expand, but not contract, and was not suitable for use over `live continuous joints' in concrete.
"* * *.
"35. After completion of the Abo School, it was discovered that the roof leaked and that the Flintkote Company's product was not suitable and reasonably fit to be used to provide a roof impervious to the elements as designed for the Abo School.

*1288 "36. Defendant Flintkote knew that this product would be used on the Abo School as a prototype nuclear fallout underground school, and represented that it would safely and adequately do the job for which it was intended."
The conclusions of law originally made by the trial court, which are material to a resolution of this appeal, are:
"4. As evidence by competent testimony from expert witnesses, defendant Standhardt did not fulfill his contract with plaintiff in that he failed to use the ordinary skill and care usually exercised by architects in New Mexico in the preparation of the plans, specifications and working drawings, and in the supervision of the construction of the Abo School; the plans, specifications and drawings were faulty in design and insufficient for the purpose intended, and the supervision was insufficient and neglected, insofar as the slab roof and general waterproofing over the main structure was concerned, since the same is not impervious to the elements and acts of nature and has leaked precipitation since its completion and still continues to do so; and, by reason thereof, plaintiff should have judgment against the defendant Standhardt.
"* * *.
"8. The representations and warranties made by defendant Flintkote to defendant Standhardt regarding the quality and use of the Flintkote monoform product on the Abo School constituted an actionable, false, implied warranty that said products were suitable and reasonably fit to be used on the Abo School to provide a roof and waterproofing impervious to the elements.
"9. The representations and warranties made by defendant Flintkote to plaintiff's agent, defendant Standhardt, inured to the plaintiff's benefit as a third party beneficiary, and plaintiff has a cause of action on said implied warranties; and, by reason thereof, plaintiff should have judgment against the defendant Flintkote.
"10. Defendant Flintkote, as a manufacturer, placed its product on the market and, by reason thereof, represented that it would safely and adequately do the job for which it was intended and represented. The plaintiff, on products liability theory, has a cause of action against the defendant Flintkote; and, by reason thereof, plaintiff should have judgment against the defendant Flintkote."
Though some of the findings relate to the liability imposed upon Flintkote in favor of the School Board by the trial court, which we reversed, we consider them inasmuch as it is not clear which findings were left undisturbed, since the School Board's claim against Flintkote, based upon breach of warranty or products liability, was barred by the four-year statute of limitation. The applicability of the statute of limitation was not raised on remand or on this appeal.
According to the findings of the trial court, the waterproofing material supplied by Flintkote would have been adequate had the specifications prepared by Standhardt for a monolithic design been followed. See finding No. 28, supra. Another finding No. 31 above, which remains undisturbed, is that Standhardt did not rely upon the recommendations of any person but used his own professional judgment. This, we believe, is significant when compared to conclusion No. 8, supra, made by the trial court with respect to warranties. The evidence shows that Flintkote recommended the use of its product on the basis of the original plans and specifications, which called for a monolithic structure, and we believe that Flintkote had a right to rely upon those plans. Flintkote was not consulted on the change from a monolithic structure to the pouring of the 12 separate slabs. The trial court further found that Standhardt used his own professional judgment. This factual situation is similar to the one present in Staley v. New, 56 N.M. 756, 250 P.2d 893 (1952):
"Manifestly it would be inequitable and unjust to hold that a general contractor or a subcontractor cannot rely upon specifications given to them for the express purpose of submitting a bid. The rights of the parties are to be measured and determined by the particular set of plans and specifications (Exhibit 4) upon which the contractor and subcontractor submitted their bid. The rule is well stated by the Supreme Court of Illinois in the case of City of Elgin v. Joslyn, 136 Ill. 525, 26 N.E. 1090, 1091: `A contractor who bids for work is bound only by the specifications which are shown to him at the time he bids, and upon which his bid is based, * * *.'"
Also controlling is our case of Driver-Miller Plumbing, Inc. v. Fromm, 72 N.M. 117, 381 P.2d 53 (1963):
"The second point on appeal is to the effect that plaintiff should have been held liable in damages to defendants on their counterclaim because of breach of warranty to furnish a radiant heating system as specified and which would be usable as installed.
"As to the claim that there was a breach of warranty in failing to furnish the system specified, the discussion above should be a complete answer. The court found, and the finding is amply supported by adequate proof under the most stringent requirements, that the installation was made by plaintiff in accordance with instructions from Melvin B. Fromm, the general contractor, and with his knowledge and acquiescence. Accordingly, no complaint can be made that plaintiff failed to comply strictly with the original specifications.
"Concerning the claimed implied warranty that the system when installed would be usable, we call attention to the fact that Mr. Fromm obtained the specifications and gave them to plaintiff. Also, it was Mr. Fromm who gave the directions with reference to the deviations therefrom. We see no basis for a claim that plaintiffs should be held responsible for the failure of the system to heat satisfactorily.
"This case is very like Staley v. New, 56 N.M. 756, 250 P.2d 893, the only difference being that here Mr. Fromm, the owner and general contractor, made certain changes in the specifications, whereas no changes were made in the Staley case. However, this difference in the factual situation in no way alters or affects the rule there announced. Under the facts, plaintiff cannot be held to have warranted that the system would operate satisfactorily."
The difference in the factual situation in the two foregoing cases as compared to the instant case does not change the rule announced therein. In the instant case Standhardt, the architect, changed the plans and specifications without consulting Flintkote. Findings Nos. 25, 26, 27, 28 and 31, indicate a change in plans and specifications from a monolithic structure to one containing 12 separate slabs, plus the specific finding that he relied upon his own professional judgment and not upon any recommendations of any other person.
Accordingly, we hold that the trial court erred in its conclusions Nos. 8, 9 and 10, relating to a breach of an implied warranty by Flintkote, as made in the original decision, although conclusion No. 9 awards judgment to the School Board and against Flintkote.
We next consider whether Flintkote or its agent, after obtaining knowledge of the change from a monolithic slab, had a duty to warn of a possible danger in using Flintkote's product. See finding No. 32. We assume that such knowledge was obtained when Baymiller, Flintkote's agent, was present when the 12 separate slabs were being poured instead of the monolithic slab. We also consider whether the doctrine of strict liability applies to the *1290 case at bar. There are several conditions precedent to a seller's liability noted in Restatement of the Law 2d, Torts, § 402A at 347, which must be established: (1) That the product was sold in a defective condition unreasonably dangerous to the user or consumer or to his property; (2) that the seller was engaged in the business of selling such a product; and (3) that the product was expected to and did reach the consumer without substantial change in the condition in which it was sold. We have adopted the doctrine of strict liability in tort. Stang v. Hertz Corporation, 83 N.M. 730, 497 P.2d 732 (1972). Can the doctrine of strict liability, or products liability as called by the trial court, apply in this case? We think not. Restatement, supra, in its comment at 352, states:
"* * *. The article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics. * * *"
Applying this test to the Flintkote product would lead to the conclusion that the product in the first place was not defective or unreasonably dangerous to the user in this case.
We must also consider whether there was a duty to warn the user of the product. We believe the warning is required only when the product is "unreasonably dangerous" and we have no such finding in this case. What we have is a finding that remained undisturbed that the plans and specifications for waterproofing "were faulty in design and defective." See finding No. 10, supra. In Annot. 76 A.L.R.2d 9, Manufacturer's or seller's duty to give warning regarding product as affecting his liability for product-caused injury, at 15, the rule is summarized as follows:
"Assuming (1) that a product sold is dangerous, (2) that this fact is or should be known to the manufacturer or seller, and (3) that the danger is not one that is obvious or known to, or readily discoverable by, the user, and is not one which arises only because the product is put to some unforeseeable, unexpected use, the manufacturer or seller of the product has a duty to warn of the danger."
In O.S. Stapley Company v. Miller, 6 Ariz. App. 122, 430 P.2d 701 (1967), in a products liability case, the court there held that when a manufacturer markets a product for a specific purpose and the product is used for a purpose not reasonably anticipated by the manufacturer, the manufacturer should not be held to strict tort liability, and reversed and remanded for a new trial. This ruling was appealed to the Supreme Court of Arizona and that court, in O.S. Stapley Company v. Miller, 103 Ariz. 556, 447 P.2d 248 (1968), after discussing Restatement of the Law 2d, Torts, § 402A (1965), and referring particularly to comment "p," said the following:
"Applying this to the case before us, we further hold that it was error for the trial court to direct a verdict on the issue of strict liability in favor of the plaintiff against the various defendants. It is clearly apparent that the product failed to reach the user without some change which may have been substantial, and it is conceivable that such alteration may have been the proximate cause of the accident and of the plaintiff's injuries. The trial court erred in refusing to submit this issue to the jury."
The trial court did not make any finding relative to the effect of the change in specifications by Standhardt, even after remand, and based its judgment on findings and conclusions "left undisturbed" by this court's opinion, and concluded as a matter of law that Standhardt and Flintkote were in pari delicto and joint tortfeasors. In order to understand the trial court's ruling upon remand, we need only refer to the oral decision made by the trial judge, which is part of the record before us:
"I am going to allow it on the basis of contribution. I don't think we can measure the degree of negligence and say that one was more negligent than the other, one was passive or active, one primary and the other secondary. I think this is *1291 a case where both parties were at fault and I practically say so in one of my findings. I said they were jointly and severally liable. I think it was negligence on the part of Standhardt in approving the change order from monolithic to twelve different slabs, but at the same time there were enough representatives of Flintkote present to have given warning under the circumstances. I found from the evidence, and I feel it is justified, that the material was good working one way but not both ways. It wouldn't both contract and expand. I feel that under the circumstances that there was negligence on the part of both and it contributed to it, so I will allow it on the basis of contribution and no attorneys' fees on top of that, just straight contribution."
In a caveat to Restatement, supra, at 348, the following is stated:
"The Institute expresses no opinion as to whether rules stated in this Section may not apply
"(1) * * *;
"(2) to the seller of a product expected to be processed or otherwise substantially changed before it reaches the user or consumer; or
"(3) to the seller of a component part of a product to be assembled."
See also comment on caveat, paragraphs "p" and "q," Restatement, supra, at 357-358.
We hold that the doctrine of strict liability in tort has no application in this case and the trial court obviously did not apply the doctrine at the second trial, although it had previously premised liability to the School Board on the part of Flintkote on this basis at the first trial, as well as on the basis of implied warranty. We also believe that the trial court committed error in finding that there was a "failure to warn plaintiff or Standhardt because of the separate pours instead of the monolithic slab."
We further believe that the implied warranty rule has no application in this case, in view of our discussion of the rules as to strict liability in tort, the duty to warn and the change in specifications by Standhardt without consultation with Flintkote, coupled with the finding by the trial court that if the original specifications had been followed, adequate results would have been obtained.
That leaves for disposition only the issues of indemnity, contribution and whether the parties were joint tortfeasors. On the question of indemnity, we have held that there can be no indemnity when the parties are in pari delicto. The general rule is that one tortfeasor cannot recover indemnity from another where their joint concurring acts were the proximate cause of the damage. Lommori v. Milner Hotels, 63 N.M. 342, 319 P.2d 949 (1957). In that case we held that where there is any recovery over for purposes of indemnity by one tortfeasor against another, it must be on the basis that they are not in pari delicto. The trial court concluded at the second trial in the instant case that the parties were in pari delicto and were joint tortfeasors. To resolve the question posed here, we must determine if the trial court was correct in its conclusion. In our previous opinion in Board of Education, School District 16 v. Standhardt, supra, we held that the trial court's conclusion No. 4, insofar as it may contain an ultimate finding, was supported by substantial evidence. It is clear from the evidence and from our prior opinion that we concurred with the conclusion of the trial court that Standhardt was negligent in the preparation of the plans and specifications; that they were faulty in design and insufficient; and that the supervision was insufficient and neglected.
Accordingly, this would prohibit the application of the rule that indemnity can be allowed, since this conclusion of negligence on the part of Standhardt has been adjudicated by this court. Both Rio Grande Gas Company v. Stahmann Farms, Inc., 80 N.M. 432, 457 P.2d 364 (1969), and Lommori v. Milner Hotels, supra, hold that one tortfeasor cannot recover from another when they are in pari delicto. See also Krametbauer v. McDonald, 44 N.M. 473, 104 P.2d 900 (1940). We do not agree that the parties *1292 were in pari delicto, but the trial court, having concluded that they were, was correct in refusing the claim of indemnity sought to be enforced by Standhardt against Flintkote.
In this case, however, we have determined that there was no strict liability in tort on the part of Flintkote; that the finding of the trial court of a breach of an implied warranty was in error; and that there was no legal duty to warn on the part of Flintkote; which, coupled with our previous opinion that the trial court's findings and conclusions that Standhardt was negligent, was supported by substantial evidence. Consequently, we now hold that Flintkote was not a joint tortfeasor and, therefore, not responsible for the negligent acts of Standhardt. Where there is no negligence, there can be no right of contribution.
The judgment of the trial court is reversed and the cause remanded with instructions to dismiss the third party complaint, with costs to be awarded in favor of the third party defendant.
It is so ordered.
McMANUS, C.J., and MARTINEZ, J., concur.