879 P.2d 101

Nathan B. **FERNANDEZ, as Personal Representative of the Estate of Victor E. Fernandez, Deceased, Plaintiff–Appellant,**

and

Tessie Fernandez, as Parent and Guardian of Jason Fernandez and Jonathan Fernandez, Involuntary Plaintiff–Appellant,

v.

FORD MOTOR COMPANY, CMI Corporation, Rust Equipment Company, Broce Construction Company, and Richardson Ford Sales, Inc., Defendants–Appellees,

and

Mountain States Mutual Casualty Company, Plaintiff–In–Intervention–Appellee.

Nos. 13304, 14101.

Court of Appeals of New Mexico.

May 4, 1994.

William D. Teel, Tanya L. Scott, Teel & Scott, P.C., Albuquerque, for plaintiff-appellant.

Ralph W. Steele, II, Albuquerque, for involuntary plaintiff-appellant.

Robert G. McCorkle, Susan K. Barger, Patrick M. Shay, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, for defendant-appellee Ford Motor Co.

C. Kristine Osnes, D. Michael Johanson, Sager, Curran, Sturges & Tepper, P.C., Albuquerque, for defendant-appellee CMI Corp.

Thomas L. Johnson, George R. McFall, Modrall, Sperling, Roehl Harris & Sisk, P.A., Albuquerque, for defendant-appellee Rust Equipment Co.

Sarah M. Bradley, Bradley & McCulloch, P.A., Albuquerque, for defendant-appellee Broce Const. Co.

Grey W. Handy, Carpenter, Comeau, Maldegen, Brennan, Nixon & Templeman, Santa Fe, for defendant-appellee Richardson Ford Sales.

Mark J. Riley, Padilla, Riley & Shane, P.A., Albuquerque, for plaintiff-in-intervention Mountain States Mut. Cas. Co.

## OPINION

ALARID, Judge.

This consolidated appeal began as a wrongful death case in which Plaintiff's father was run over and killed by a backing tractor-trailer road construction truck. Plaintiff appeals the district court's granting of summary judgment in favor of the record owner of the tractor-trailer. Plaintiff also appeals the granting of summary judgment in favor of the manufacturers and sellers of the tractor-trailer. Involuntary–Plaintiff appeals the district court's denial of a motion to dismiss a complaint-in-intervention filed by the workers' compensation provider for reim-

bursement of death benefits paid to Plaintiff and to the surviving widow and minor dependents of the deceased worker. We reverse and remand to the district court with instructions.

BACKGROUND AND FACTS

Victor Fernandez died in a work-related accident when a tractor-trailer combination truck backed over him on November 10, 1987. Mr. Fernandez worked as a road construction foreman for Mountain States Constructors at the time of his death. Broce Construction Company (Broce) was the registered owner of the tractor and the trailer (tractor-trailer) involved in the accident which killed Mr. Fernandez. Prior to the accident, Broce installed an audible reverse signal alarm on the tractor which it had purchased several years earlier. However, no such alarm was ever installed on the trailer and one issue raised in this appeal is whether the reverse signal warning alarm system utilized by Broce was adequate and functioning at the time Mr. Fernandez was killed.

Mr. Fernandez's son, Nathan (Plaintiff), received workers' compensation survivor benefits from Mountain States Mutual Casualty Company (Carrier) for the death of his father until reaching the age of eighteen. After reaching the age of majority, Plaintiff was then named as the personal representative for the estate of Mr. Fernandez. He thereafter filed a wrongful death action alleging negligence and strict products liability against Ford Motor Company (Ford) as manufacturer of the tractor; against Richardson Ford Sales, Incorporated (Richardson) as seller of the tractor; against CMI Corporation (CMI) as manufacturer of the trailer; and against Rust Equipment Company (Rust) as seller of the trailer which backed over Mr. Fernandez. Plaintiff also named Broce as a defendant in the wrongful death case as the record owner of the tractor-trailer. We also note on appeal Carrier advises this Court that it paid, and continues to pay, survivor benefits to Tessie Fernandez, Mr. Fernandez's widow (Involuntary Plaintiff), and his two minor dependents.

Approximately one month following the initiation of the wrongful death lawsuit, Invol- untary Plaintiff filed an affidavit in the district court wherein she elected, on behalf of herself and her two minor children, to receive workers' compensation benefits from Carrier as their sole remedy for the death of Mr. Fernandez. Thereafter, Broce filed a motion for judgment on the pleadings claiming that, at the time of the accident, it was only the technical owner of the tractor-trailer which killed Mr. Fernandez; that it was no longer in business at the time of the accident; and that, as bailor of the tractor and the trailer rig, it was not responsible or liable for Mr. Fernandez's death. After memoranda in support of the respective positions were filed, the district court granted Broce's motion for judgment on the pleadings (decided as a motion for summary judgment). Plaintiff appeals that decision to this Court.

Prior to the district court's ruling on the motion for judgment on the pleadings, Broce, CMI, Rust, and Richardson (Defendants) filed a joint motion seeking dismissal of the complaint. Generally, the assertions raised in the motion were whether Involuntary Plaintiff and her two dependent children could lawfully elect not to receive their respective portions of any proceeds won in Plaintiff's wrongful death suit. Defendants also questioned whether Plaintiff was the proper personal representative to initiate the wrongful death action. Specifically, Defendants raised the issue of whether Plaintiff would be allowed during a wrongful death trial to present evidence as to the damages of the Involuntary Plaintiff and two children, who as noted above elected not to receive any award obtained in the wrongful death cause of action. Defendants argued that any award won by Plaintiff should be reduced by the percentage of the award that would have gone to the Involuntary Plaintiff and children. And finally, Defendants sought to have the district court name Involuntary Plaintiff and children as parties in Plaintiff's wrongful death suit and to appoint guardians ad litem for the two children with regard to election of the remedies.

Procedurally, the district court denied Defendants' joint pleading. However, in order to protect Carrier's right to reimbursement, the district court did order Carrier to be

joined in Plaintiff's wrongful death suit. Apparently, as an additional measure to ensure Carrier's reimbursement, the district court also granted Carrier leave to file a complaint-in-intervention to secure reimbursement. Thereafter, Carrier filed its complaint-in-intervention asserting that Involuntary Plaintiff and children's claims in the wrongful death suit were assigned to it under NMSA 1978, Section 52–5–17 (Cum.Supp.1990). Carrier also named as Defendants-in-Intervention Plaintiff, Ford, Richardson, CMI and Rust. Carrier seeks reimbursement from these parties in the amount of all past, and in the amount of all future, workers' compensation benefits. The district court deferred ruling on the "questions of presentation of evidence, jury instructions, reductions in award or distributions of proceeds."

After Carrier filed the complaint-in-intervention, Involuntary Plaintiff filed a motion to dismiss that pleading. The motion to dismiss was denied and Involuntary Plaintiff appeals that ruling to this Court. Additionally, at the same time that the district court denied Involuntary Plaintiff's motion to dismiss, it granted summary judgments in favor of Ford, Richardson, CMI, and Rust in response to independent and separate motions for summary judgment which had been filed by these Defendants during the course of the litigation. Plaintiff appeals the decision concerning the remaining summary judgments in favor of Defendants. The separate appeals described above were consolidated and it is in this posture that we consider the present case before us. However, in addition to the consolidated appeals and the issues upon which the district court deferred ruling, two additional details need mentioning.

First, Carrier is the general liability insurance provider for two of the individually named Defendants in Plaintiff's wrongful death cause of action. Plaintiff and Involuntary Plaintiff argue that Carrier is in a conflict of interest situation requiring this Court to reverse the district court order allowing Carrier's complaint-in-intervention. Second, concerning the independent corporate structure of Broce, Broce argues that, since all shares of its stock are owned by Steven Benoit and his wife, and since Mr. Benoit and his wife donated or "loaned" all of the stock of Broce, which included the road construction equipment, to Mountain States Constructors, Broce is a wholly owned subsidiary of Mountain States Constructors. Thus, Broce argues that Plaintiff cannot sue it for wrongful death because Mountain States Constructors has and continues to pay survivor benefits under the Workers' Compensation Act for the death of Mr. Fernandez.

## DISCUSSION

We first consider whether the district court erred in granting summary judgment to Broce as record owner of the tractor-trailer at the time of the accident. Summary judgment is a drastic measure that should be used with great caution. *Knapp v. Fraternal Order of Eagles*, 106 N.M. 11, 12, 738 P.2d 129, 130 (Ct.App.1987). It is proper only when the case presents no genuine issue of material fact and the movant is entitled to a judgment as a matter of law. *Paca v. K–Mart Corp.*, 108 N.M. 479, 480, 775 P.2d 245, 246 (1989). "In deciding whether summary judgment is proper, a court must look to the whole record and view the matters presented in the light most favorable to support the right to trial on the merits." *Cunningham v. Gross*, 102 N.M. 723, 725, 699 P.2d 1075, 1077 (1985). However, once the movant for summary judgment has made a prima facie showing of entitlement, "the burden shifts to the party opposing the motion to show at least a reasonable doubt as to whether a genuine issue for trial exists." *Koenig v. Perez*, 104 N.M. 664, 666, 726 P.2d 341, 343 (1986) (citations omitted).

### Potential Liability of the Record Owner

Plaintiff argues that because Broce was the registered owner of the tractor-trailer which killed Mr. Fernandez, there are genuine issues of material fact concerning Broce's corporate liability that require reversal of the district court's granting of summary judgment. Plaintiff asserts that, as the owner of the road construction equipment, Broce was negligent with respect to the death of Mr. Fernandez by failing to place an audible reverse signal alarm on the trailer, and negligent in failing to insure that the reverse signal alarm installed on the tractor prior to

the accident was properly maintained and functioning. In sum, Plaintiff argues that Broce, as the record owner of the tractor-trailer involved in this accident, has a non-delegable duty to exercise reasonable care to ensure that its equipment is safe.

Although Broce does not contest the fact that it is the registered owner of the tractor-trailer, Broce counters that, at the time of the accident, it was no longer in the business of road construction and that it had relinquished custody and all control of the tractor-trailer to Mountain States Constructors. As evidence, Broce introduced various affidavits and other exhibits in support of this argument tending to show that Mountain States Constructors exercised custody and control of the tractor-trailer. Further, Broce argues on appeal, as it did in the district court below, that the law of bailment controls this controversy and as bailor of the tractor-trailer, any duty it may have owed to Mr. Fernandez ceased upon transfer of the tractor-trailer to Mountain States Constructors. Broce also argues that New Mexico does not impose a non-delegable duty of maintenance on bailed property, that New Mexico does not follow the dangerous instrumentality doctrine, that Plaintiff failed to establish the reverse signal alarm which had been installed on the tractor prior to the accident was inoperable or improperly installed, and that Mountain States Constructors is not an alter ego business entity of Broce.

■■■ Generally, in New Mexico a certificate of title issued by the motor vehicle division "shall be received in evidence as prima facie evidence of the ownership of the vehicle named in the certificate...." NMSA 1978, § 66–3–12 (Repl.Pamp.1989). However, evidence contrary to the record title can be introduced to rebut the presumption of ownership. *See Lee v. General Accident Ins. Co.*, 106 N.M. 22, 738 P.2d 516 (1987). The district court concluded that Broce successfully rebutted the presumption of liability through ownership of the tractor-trailer and granted Broce's motion to dismiss as a motion for summary judgment. In its letter announcing that decision, the district court stated that "based upon the uncontradicted evidence in Mr. Benoit's Affidavit that own-

ership and control interest in the tractor and trailer in question were in Mountain States Constructors, and that only technical title was left in Broce Construction which did not function as an entity, therefore, there is no basis to be liable to the plaintiff or for the assertion of comparative negligence." We disagree.

In response to Broce's rebuttal of ownership arguments and evidence, Plaintiff submitted to the district court evidence of Broce's separate corporate identity. This evidence precludes summary judgment on the issue of whether Broce is a separate corporate entity. Among the evidence found in the record is proof that Broce was the registered owner of numerous vehicles, including the tractor-trailer which killed Mr. Fernandez, from the time before the accident through 1989; that in 1988 Broce purchased new vehicles during the period of time in which it claimed it had ceased doing business; that Broce renewed its corporate status and filed corporate profit reports with the State Corporation Commission since before the accident through 1990; that Broce continued to maintain a construction license from the New Mexico Construction Industries Division through 1991; and that Broce advertised in the telephone directory before and after the accident in question. In short, we conclude that Plaintiff presented evidence showing there is a reasonable doubt as to whether Broce was an independent business entity at the time of Mr. Fernandez's death. *See Cole v. City of Las Cruces*, 99 N.M. 302, 305, 657 P.2d 629, 632 (1983) (generally, a subsidiary and its parent are viewed as independent corporations).

As further support for our decision, we note inconsistencies in Broce's answer brief concerning its corporate status and its so-called bailment of the tractor-trailer to Mountain States Constructors. For example, although Broce maintains that after December 1986 it ceased doing business as a road construction company, it maintains that Mr. Benoit "continued" as the president of Broce to the present time and that "Broce has not yet been liquidated or dissolved due to various tax considerations...." Further, at one point in its answer brief, Broce main-

tains that it "loaned" the tractor-trailer in question to Mountain States Constructors, yet in another section of its answer brief it claims that the construction equipment simply "began to be used" by Mountain States Constructors, and still later, Broce claims that the tractor-trailer "was donated" to Mountain States Constructors. In light of the foregoing, we decline to find that the law of bailment controls this dispute.

"A bailment requires possession by the bailee. Possession requires 'the union of two elements, physical control over the thing possessed, and an intent to exercise that control.'" *Olivas v. Olivas,* 108 N.M. 814, 819–20, 780 P.2d 640, 645–46 (Ct.App.1989) (quoting R. Brown, *The Law of Personal Property* § 10.2, at 213–14 (W. Raushenbush 3d ed. 1975)). Our review of the record reveals that, although Mountain States Constructors is in physical possession of the tractor-trailer, it appears that Broce continues to retain control over other aspects of the construction equipment such as the tax considerations mentioned above. Thus, we conclude it was improper for the district court to grant Broce summary judgment on the basis that Broce was no longer an independent business entity at the time of the accident. For all the above-stated reasons, we remand Plaintiff's cause of action against Broce to the district court for further proceedings consistent with this opinion.

Reimbursement, Joinder, and the Complaint–in–Intervention

We next consider the issues raised by Carrier's effort to receive reimbursement for the total amount of survivor benefits paid to Plaintiff and to Mr. Fernandez's widow and two dependent children. Specifically, our review examines whether the district court properly ordered Carrier to be joined as a plaintiff in the wrongful death suit and additionally granted Carrier leave to file a complaint-in-intervention naming Mrs. Fernandez, as parent and guardian of her two minor children, as Involuntary Plaintiff. In this context, we also consider whether the district court properly denied Involuntary Plaintiff's motion to dismiss the complaint-in-intervention.

Review of the record reveals that the district court ordered Carrier "to be joined as a plaintiff" in Plaintiff's wrongful death cause of action in order for it to obtain reimbursement of the workers' compensation payments made as a result of Mr. Fernandez's death. While New Mexico recognizes that an employer or its workers' compensation carrier has a right of reimbursement from a worker who collects damages from a third-party defendant following payment of workers' compensation benefits, in the present case, the district court erred by prematurely ordering Carrier to be joined as a plaintiff in the wrongful death suit and in granting Carrier leave to file a complaint-in-intervention in order to receive reimbursement. We explain.

▮ NMSA 1978, Section 52–5–17 (entitled "Subrogation") (Repl.Pamp.1991) (effective until January 1, 1991), provides in pertinent part:

The right of any worker or employee, or in the case of his death, of those entitled to receive payment or damages for injuries or disablement occasioned to him by the negligence or wrong of any person other than the employer or any other employee of the employer ... shall not be affected by the Workers' Compensation Act ..., but the claimant shall not be allowed to receive payment or recover damages for those injuries or disablement and also claim compensation from the employer. In such case, the receipt of compensation from the employer shall operate as an assignment to the employer or his insurer, guarantor or surety of any cause of action, to the extent of payment by the employer to or on behalf of the worker or employee for compensation or any other benefits to which the worker or employee was entitled....

Although designated as a subrogation measure, in fact, the statute operates as a *"reimbursement"* provision for the employer or the employer's workers' compensation provider for compensation properly paid an employee. *Montoya v. AKAL Sec., Inc.,* 114 N.M. 354, 355, 838 P.2d 971, 972 (1992) (emphasis in original) (citing *Kandelin v. Lee Moor Contracting Co.,* 37 N.M. 479, 489, 24 P.2d 731, 736 (1933)). Further, our Supreme

Court has "held this to be a reimbursement statute and that there is but a single cause of action in the employee, even though a part of the recovery is to be paid to the employer or his insurer." *Royal Indem. Co. v. Southern Cal. Petroleum Corp.*, 67 N.M. 137, 144, 353 P.2d 358, 363 (1960) (citing *Kandelin*, 37 N.M. at 489, 24 P.2d at 735). Therefore, in the present case, it is undeniable that Carrier will be entitled to reimbursement for compensation benefits paid as a result of the death of Mr. Fernandez should Plaintiff recover damages. *Montoya*, 114 N.M. at 358, 838 P.2d at 975. However, the district court must exercise caution in deciding during what phase of the litigation to allow the intervention so as to avoid prejudice to Plaintiff. *See Varney v. Taylor*, 71 N.M. 444, 446, 379 P.2d 84, 85 (1963) ("To allow unencumbered intervention would create such a potential conflict of interest that we do not believe it should be allowed.").

■ We believe the guidance found in *Varney* as to when to allow intervention is applicable to the present dispute. In that case our Supreme Court wrote that "the insurance company has the right to intervene, but the intervention itself should not be made final until the main case is ready for judgment, and, in the interim, that the insurance company be precluded from participating as a party-plaintiff." *Id.* We conclude that this directive is especially applicable in this case because Carrier is both the workers' compensation insurer for Mountain States Constructors and the general insurer of two of the named Defendants. Further, aside from preventing the potential conflicts and prejudice noted above, there is another reason for delaying intervention until the underlying case is ready for judgment. As explained in *Herrera v. Springer Corp.*, 85 N.M. 6, 8, 508 P.2d 1303, 1305 (Ct.App.), *aff'd in part, rev'd in part*, 85 N.M. 201, 510 P.2d 1072 (1973), *overruled on other grounds by Sunwest Bank of Albuquerque v. Roderiguez*, 108 N.M. 211, 214, 770 P.2d 533, 536 (1989), "[t]he reimbursement is out of amounts received by the workman because the workman sues for the entire amount of damages suffered."

This language means, in the present case, that Carrier's right to reimbursement does not arise unless and until there has been a recovery by Plaintiff as the personal representative for the estate of Mr. Fernandez. Therefore the district court erred by granting Carrier leave to file a complaint-in-intervention for reimbursement and by ordering Carrier's intervention into the underlying suit prior to a judgment for damages being awarded. We therefore reverse the district court's decision ordering Carrier's intervention into Plaintiff's wrongful death suit and remand with instructions that the district court not finalize Carrier's intervention until such time as a judgment for damages is ready to be entered.

■ We also reverse the district court's denial of Involuntary Plaintiff's motion to dismiss the complaint-in-intervention filed by Carrier for reimbursement of death benefits paid to Plaintiff, Involuntary Plaintiff, and Mr. Fernandez's two minor children. Because Carrier can be reimbursed only out of any award received by the decedent's estate, *see Herrera*, 85 N.M. at 8, 508 P.2d at 1305, Carrier's cause of action for reimbursement of benefits paid will be against Plaintiff as the personal representative of the estate, *see Transport Indem. Co. v. Garcia*, 89 N.M. 342, 345, 552 P.2d 473, 476 (Ct.App.), *cert. denied*, 90 N.M. 9, 558 P.2d 621 (1976). Under such circumstances, we see no reason to require Involuntary Plaintiff's involvement at any stage of the litigation. Our holding that Involuntary Plaintiff is not a necessary party to this litigation, however, should not be construed as an opinion on whether Carrier will be entitled to reimbursement from any award for benefits paid to Involuntary Plaintiff and her two minor children. Carrier will not be prevented from raising this claim should it seek reimbursement for benefits paid.

As to the questions of Involuntary Plaintiff's election, on behalf of herself and her two dependent children, not to receive monetary benefits from the wrongful death suit, presentation of evidence, jury instructions, and reduction in award or distribution of proceeds, we decline to address these issues at this time. Because Carrier's right to re-

imbursement and the issue of proper distribution of any recovery hinge on whether there is ultimately an award of damages, all issues relating to the distribution of a recovery are not yet ripe for review. However, we point out that "our wrongful death statutes permit only one claim for damages for the death of one person." *Lewis v. Dairyland Ins. Co.*, 113 N.M. 686, 688, 831 P.2d 985, 987 (1992). Therefore, we envision that the worker, or in the present case, the personal representative, sues for the entire amount of damages. Further, in *Clemmer v. Carpenter*, 98 N.M. 302, 304–05, 648 P.2d 341, 343–44 (Ct.App.), *cert. denied*, 98 N.M. 336, 648 P.2d 794 (1982), this Court recognized a mother's right to settle a suit for damages against tortfeasors on behalf of the decedent's three daughters while at the same time electing to receive workers' compensation benefits as her sole remedy. Thus, in the present case, if three beneficiaries under the wrongful death statute elect not to receive any monetary damages won in the wrongful death suit, then the personal representative would receive the total amount of any damages awarded as the only beneficiary not disclaiming an interest.

Summary Judgments for the Manufacturers and Distributors

 Our final area of review concerns the summary judgments granted the individual manufacturers and retail distributors of the tractor and of the trailer involved in this accident. Plaintiff raises negligence and strict products liability theories of recovery against Ford, Richardson, CMI, and Rust. Both theories of liability are predicated upon the omission of the manufacturers to install reverse signal alarms on the tractor and the trailer which ran over Mr. Fernandez when these components were manufactured and sold. Under the negligence theory a plaintiff must prove that a duty is owed by the defendant to the plaintiff, that the defendant breached that duty, and that the breach caused the injuries to the plaintiff. *Lopez v. Maez*, 98 N.M. 625, 630, 651 P.2d 1269, 1274 (1982); *see also Calkins v. Cox Estates*, 110 N.M. 59, 792 P.2d 36 (1990). The existence of a duty is determined by the court as a matter of law. *Id.* at 62, 792 P.2d at 39.

Under the strict liability theory a plaintiff must prove: "(1) that the product was sold in a defective condition unreasonably dangerous to the user or consumer or to his property; (2) that the seller was engaged in the business of selling such a product; and (3) that the product was expected to and did reach the consumer without [a] substantial change in the condition in which it was sold." *Standhardt v. Flintkote Co.*, 84 N.M. 796, 803, 508 P.2d 1283, 1290 (1973). What this means, in essence, is that manufacturers have a duty to produce products which are not defective nor constitute unreasonable risk of injury.

Defendants argue, however, that because Broce installed a reverse signal alarm on the tractor involved in this accident, the claims raised by Plaintiff against Defendants are moot. Thus, Defendants urge this Court to decline to address these issues on appeal. However, Plaintiff counters that Broce's installation of the reverse signal alarm was improper and inadequate because the wiring was exposed to road hazards, the elements, and other forms of inadvertent disconnection. Plaintiff further suggests that a factory-installed reverse signal alarm would have greatly diminished the possibility of accidental malfunction and that a reverse signal alarm installed on the tractor does not address or resolve the issue of whether the trailer should have been equipped with such a safety device.

 Accordingly, this fact pattern presents a unique causation problem in that the reverse signal alarm installed by Broce, which Plaintiff claims was inadequate and malfunctioning, was meant to prevent the exact type of accident which ultimately resulted in the death of Mr. Fernandez. Because we understand Plaintiff's underlying complaint to allege that the death of Mr. Fernandez could have been avoided by the proper installation of reverse signal alarms during the manufacturing phase of these products, we must address the negligence and strict products liability claims against the manufacturers and sellers of these products. Broce's installation of a reverse signal alarm on the tractor does not resolve the issue of whether the manufacturers of the tractor or the trailer are liable for not equip-

ping their products with reverse signal alarms. *Skyhook Corp. v. Jasper*, 90 N.M. 143, 147, 560 P.2d 934, 938 (1977) (a manufacturer's "failure to incorporate into a product a safety feature or device may constitute a defective condition of the product"), *overruled on other grounds by Klopp v. Wackenhut Corp.*, 113 N.M. 153, 157, 824 P.2d 293, 297 (1992). Accordingly, we first consider the summary judgments granted in relation to the claims of strict products liability. In this context, we refer back and apply our opening discussion of the proper standard of review of summary judgment. The issue on appeal is whether the district court properly granted summary judgment in favor of the manufacturers and distributors of the tractor and the trailer by ruling that the manufacturers had no duty to design or build their respective products with factory installed reverse signal alarms.

Strict Products Liability

New Mexico adopted the principle of strict products liability based on the Restatement (Second) of Torts Section 402A (1965) in *Stang v. Hertz Corp.*, 83 N.M. 730, 732, 497 P.2d 732, 734 (1972). As set out in *Stang*, Section 402A provides:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

"(a) the seller is engaged in the business of selling such a product, and

"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in Subsection (1) applies although

"(a) the seller has exercised all possible care in the preparation and sale of his product, and

"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

*Id.* at 732, 497 P.2d at 734. Although *Stang* concerned a wrongful death cause of action involving a rented motor vehicle, the Su-

preme Court noted that the "principle of strict liability which we hereby adopt would also apply in cases involving manufacturers and retailers." *Id.* at 735, 497 P.2d at 737. Therefore, Plaintiff's claims against Ford and CMI, as manufacturers of the tractor and trailer, and against Richardson and Rust, as the retail distributors of the tractor and trailer, are properly raised.

■■■ "The purpose behind the strict products liability doctrine is to allow an injured user or consumer to recover against a supplier or manufacturer without the requirement of proving negligence. This purpose is accomplished by imputing liability for an injury caused by a product to the seller of the product, with or without the presence of negligence on his part." *Trujillo v. Berry*, 106 N.M. 86, 88, 738 P.2d 1331, 1333 (Ct.App.) (citations omitted), *cert. denied*, 106 N.M. 24, 738 P.2d 518 (1987). "Strict products liability does not, however, preclude liability against a retailer based upon the alternative ground of negligence of the seller where such negligence can be proved." *Id.* Under Section 402A, there are three types of defects: manufacturing defects, design defects, and warning defects. *Jiminez v. Dreis & Krump Mfg. Co.*, 552 F.Supp. 301, 303–04 (S.D.N.Y. 1982), *rev'd on other grounds*, 736 F.2d 51 (2d Cir.1984).

In the present case, Plaintiff alleges that the manufacturers of the Ford LT–9000 cab and chassis (vehicle identification No. 1FDYU90R5DVA33316) and of the CMI model 2030 bottom dump trailer (vehicle identification No. 12631) defectively designed these products due to their failure to install reverse signal alarms. Plaintiff further asserts that Defendants are engaged in the business of selling these types of products. Plaintiff also argues that, although a fifth wheel or hitch for pulling trailers was attached to the Ford tractor and gate control valves to operate the bottom dumps were installed on the trailer, neither of these products were substantially altered after being sold. Thus, Plaintiff argues that the strict products liability claims raised against these Defendants are proper and that this Court should reverse the district court's granting of the summary judgments.

However, Defendants attack Plaintiff's contention that these products have not undergone substantial change. Defendants argue that manufacturers and retailers of separate component parts, which are later incorporated into completed vehicles, are under no legal duty to install safety devices on those components when it is the subsequent assembly of the components by another which creates the need for the safety device. In essence, Defendants argue that by attaching the trailer to the truck, the two separate pieces of equipment became a single vehicle. Defendants claim that it is only when the two are joined together that the need for the safety device in question arises. Defendants cite *Verge v. Ford Motor Co.*, 581 F.2d 384 (3d Cir.1978), and the line of cases following that decision as support for their position. In *Verge*, a garbage collector was injured when struck by a backing garbage truck which was not equipped with an audible reverse signal alarm. *Id.* at 385. As in the present case, the plaintiff in *Verge* initiated a suit against Ford, as manufacturer of the garbage truck cab and chassis; against the manufacturer of the garbage compactor body; and against the assembler of the vehicle, alleging that each was liable for failing to install a reverse signal alarm. At trial, the jury found that the absence of a reverse signal alarm was a defect which rendered the truck unreasonably dangerous within the meaning of Section 402A. *Id.* at 386. The Third Circuit upheld this finding but was then confronted with the issue of "whether the responsibility for installing such a device should be placed solely upon the company that manufactured the cab and chassis, or solely upon the company who modified the chassis by adding the compactor unit or upon both." *Id.*

The *Verge* court articulated three factors to determine which party was responsible for the absence of the safety device: (1) trade custom; (2) relative expertise; and (3) practicality. *Id.* at 387. After determining that there was insufficient evidence on the issue of trade custom, the *Verge* court determined that the final assembler of the component parts had greater expertise and was in a more practical position to install the warning device. *Id.* at 388. The *Verge* court then

held under the facts of that case that Ford was not responsible for the absence of a backup warning device on the cab and chassis it manufactured. *Id.* at 389. Applying the reasoning of *Verge*, Defendants argue that any possible liability for the death of Mr. Fernandez falls on Broce, as the final assembler and ultimate user of the separate component parts which made up the tractor-trailer road construction combination truck. We disagree for several reasons.

First, the tractor and the trailer involved in the present case are clearly distinguishable from the garbage truck in *Verge*. We cannot agree with Defendants' characterization of Broce as a final assembler. In *Verge*, a second-stage manufacturer permanently attached the garbage compactor body to the Ford cab and chassis. Therefore, the Ford cab and chassis was substantially modified and transformed into a finished product with a new identity of a garbage compactor. *Id.* at 387. This distinguishing fact is also evident in a second case relied on by Defendants. In *Shaw v. General Motors Corp.*, 727 P.2d 387, 389 (Colo.Ct.App.1986), a dump bed and hoist were installed on a General Motors cab and chassis to become "a pothole repair truck." Therefore, *Verge* does not control the outcome of this appeal.

In the present case, the record before us reveals that both the tractor and the trailer involved in the accident which killed Mr. Fernandez were independently registered with the New Mexico Department of Motor Vehicles and that both were independently listed as separate resources on Broce's list of assets owned as of November 1986. We note Plaintiff's observation that the Ford tractor can be disconnected from the CMI trailer and used to transport different pieces of equipment, and likewise the CMI trailer can be disconnected from the Ford tractor and attached to other vehicles capable of providing the necessary locomotion for it to perform its work. A careful reading of *Verge* reveals that while the manufacturer in that case was not held liable for the injuries caused by the backing garbage truck, that court noted that a manufacturer of a product designed for subsequent modification could be held liable if there were "evidence from

which the jury could have found that one [missing] safety device could be installed for all uses of the machine." *Verge,* 581 F.2d at 389 (relying on *Bexiga v. Havir Mfg. Corp.,* 60 N.J. 402, 290 A.2d 281, 285 (1972)). We believe the facts of this case properly present a jury with that type of question.

A second reason why we disagree with Defendants' contention that Broce is the only party possibly liable for the death of Mr. Fernandez involves consideration of evolving precedent in this area of law. Numerous courts in other jurisdictions have adopted various approaches to resolve issues concerning the liability of a manufacturer or supplier of a component part for injuries caused by defects in an assembled product. For example, many courts have held that manufacturers have a nondelegable duty to provide safety features on their products. *See Wagner v. International Harvester Co.,* 611 F.2d 224, 230 (8th Cir.1979); *Bjerk v. Universal Eng'g Corp.,* 552 F.2d 1314, 1318 (8th Cir.1977); *Ladwig v. Ermanco Inc.,* 504 F.Supp. 1229, 1234 (E.D.Wis.1981); *Rhoads v. Service Mach. Co.,* 329 F.Supp. 367, 376–77 (E.D.Ark.1971); *Uloth v. City Tank Corp.,* 376 Mass. 874, 384 N.E.2d 1188, 1192–93 (1978); *Bilotta v. Kelley Co.,* 346 N.W.2d 616, 624 (Minn.1984); *Bexiga,* 290 A.2d at 285; *Anderson v. Dreis & Krump Mfg. Corp.,* 48 Wash.App. 432, 739 P.2d 1177, 1182–83 (1987); *Shawver v. Roberts Corp.,* 90 Wis.2d 672, 280 N.W.2d 226, 231–32 (1979).

However, some courts have held that a manufacturer has no duty to equip a product with a safety device where the risk is open and obvious. *See Wansor v. George Hantscho Co.,* 595 F.2d 218, 220 (5th Cir.1979); *Orfield v. International Harvester Co.,* 535 F.2d 959, 964 (6th Cir.1976); *Kerber v. American Mach. & Foundry Co.,* 411 F.2d 419, 421 (8th Cir.1969); *Posey v. Clark Equip. Co.,* 409 F.2d 560, 563 (7th Cir.), *cert. denied,* 396 U.S. 940, 90 S.Ct. 374, 24 L.Ed.2d 242 (1969); *Ebbert v. Vulcan Iron Works, Inc.,* 87 Ill.App.3d 74, 42 Ill.Dec. 617, 618, 409 N.E.2d 112, 113 (1980).

Other courts have held the obviousness of the risk does not preclude liability, but is only one factor to consider in determining whether the duty to supply safety equipment exists. *See Ford v. Harnischfeger Corp.,* 365 F.Supp. 602, 607 (E.D.Pa.1973); *Moorer v. Clayton Mfg. Corp.,* 128 Ariz. 565, 627 P.2d 716, 719 (Ct.App.), *cert. denied,* 454 U.S. 866, 102 S.Ct. 328, 70 L.Ed.2d 167 (1981); *Auburn Mach. Works Co. v. Jones,* 366 So.2d 1167, 1168 (Fla.1979). Under a multi-factor analysis, the additional factors to be considered in determining whether a manufacturer can be held liable for failing to design and distribute a product with certain safety equipment include: (1) the product's performance as intended; (2) the presence of adequate warnings; (3) the availability of devices that would reduce the risk of injury without undue cost or interference with the machine's performance; (4) the reliability of available safety devices; and (5) the probability of the risk in relation to the cost of the protection. *See generally Wagner,* 611 F.2d at 230–31; *Dorsey v. Yoder Co.,* 331 F.Supp. 753, 760 (E.D.Pa.1971), *aff'd without opinion,* 474 F.2d 1339 (3rd Cir.1973); *Moorer,* 627 P.2d at 719; *Derrick v. Yoder Co.,* 88 Ill. App.3d 864, 43 Ill.Dec. 897, 903–05, 410 N.E.2d 1030, 1036–38 (1980); *Braxton v. Georgia–Pacific Corp.,* 419 So.2d 125 (La.Ct. App.), *cert. denied,* 423 So.2d 1150 (La.1982); *Uloth,* 384 N.E.2d at 1192–93.

Still other courts, such as the *Verge* court, have held that the duty to provide safety devices may be delegated to the dealer or purchaser of the product under some circumstances. *See Verge,* 581 F.2d at 389; *see also, Gordon v. Niagara Mach. & Tool Works,* 574 F.2d 1182, 1191–95 (5th Cir.1978); *Davis v. Caterpillar Tractor Co.,* 719 P.2d 324, 327 (Colo.Ct.App.1985); *Jimenez v. Gulf & Western Mfg. Co.,* 458 So.2d 58, 60 (Fla. Dist.Ct.App.1984); *Villar v. E.W. Bliss Co.,* 134 Mich.App. 116, 350 N.W.2d 920, 922 (1984), *appeal denied,* 422 Mich. 871, 365 N.W.2d 758 (1985); *Biss v. Tenneco, Inc.,* 64 A.D.2d 204, 409 N.Y.S.2d 874, 876 (1978), *appeal denied,* 46 N.Y.2d 711, 416 N.Y.S.2d 1025, 389 N.E.2d 841 (1979); *Noonan v. Texaco, Inc.,* 713 P.2d 160, 164 (Wyo.1986). Although New Mexico's Supreme Court has not had occasion to choose among the competing approaches, we proceed on a case-by-case basis and note that existing New Mexico uniform jury instruction and case law neces-

sitates reversal of the summary judgments granted against Plaintiff's strict products liability claims.

The ultimate test for determining if a product is defective as a result of improper design is whether the product constitutes an unreasonable risk of injury. SCRA 1986, 13–1407 (Repl.Pamp.1991), defines an unreasonable risk of injury as one which "a reasonably prudent person having full knowledge of the risk would find unacceptable." Accordingly, "the instruction leaves to the jury the task of determining whether the product constitutes an unreasonable risk of injury." *Duran v. General Motors Corp.,* 101 N.M. 742, 745, 688 P.2d 779, 782 (Ct.App.1983), *cert. quashed,* 101 N.M. 555, 685 P.2d 963 (1984); *Salinas v. John Deere Co.,* 103 N.M. 336, 341, 707 P.2d 27, 32 (Ct.App.1984) ("[t]he question of whether a product is unreasonably dangerous ordinarily is a question for the jury"), *cert. quashed,* 103 N.M. 287, 705 P.2d 1138 (1985); *see also First Nat'l Bank v. Nor–Am Agricultural Prods., Inc.,* 88 N.M. 74, 85, 537 P.2d 682, 693 (Ct.App.) (genuine issues of material fact existed in relation to strict products liability claim against a manufacturer of a liquid seed disinfectant which had been used by a grain processor), *cert. denied,* 88 N.M. 29, 536 P.2d 1085 (1975). In the present case, we believe Plaintiff's allegation of strict products liability, that the tractor and trailer were individually unreasonably dangerous as manufactured without a backup warning device, demonstrates a genuine issue of material fact requiring resolution by a jury. As final support for this ruling, we note a recent opinion from a sister jurisdiction in point.

In *Tirrell v. Navistar International, Inc.,* 248 N.J.Super. 390, 591 A.2d 643 (App.Div.), *cert. denied,* 126 N.J. 390, 599 A.2d 166 (1991), the administratrix of a worker's estate brought a strict products liability action against the manufacturer of a tractor and the manufacturer of a flatbed trailer for a worker's death after the tractor-trailer combination carrying a backhoe backed over him.

Unlike the present case, a back-up alarm was never installed on the tractor. Still, the theory of liability which the jury considered was that the manufacturers' failure to install back-up alarms on the tractor and on the trailer resulted in design defects in the products in question. Although the jury ultimately determined that the tractor was not defective, it returned a judgment against the manufacturer of the trailer under the theory of strict liability. In affirming the jury's judgment, the appellate court noted evidence that a foreseeable use of the trailer was to transport backhoes, that such use created a blind spot to the rear of the trailer, and that the only safe way to back up the trailer would be with a flag person or an audible, distinctive alarm. *Id.* 591 A.2d at 645–46. There was also evidence that alarms were readily available, would not affect the trailer's utility, and were inexpensive and easy to install. *Id.* at 646. In light of similar allegations being made in the case before us, we believe that, as in *Tirrell,* the determination of whether such evidence supports a decision that either the tractor or the trailer was defective as sold without a reverse signal alarm is for the jury to decide.

In addition, the *Tirrell* opinion also briefly mentions federal Occupational Safety and Health Act (OSHA) regulations which Defendants in the present case argue should control our review of this matter. These OSHA regulations pertain to the use of reverse signal alarms on construction site vehicles.[1] Defendants argue that the existence of the OSHA regulations support their position that they cannot be found liable for their failure to install reverse signal alarms on the tractor and the trailer because the use of such safety equipment is left to the discretion of the employer. We do not find Defendants' argument persuasive. First, Defendants cite no case law supporting this contention. Second, the existence of a federal statute pertaining to the limited employment situations covered by OSHA does not resolve the matter of whether manufacturers and retail dis-

---

1. 29 CFR, Section 1926.601(b)(4) provides:
 (4) No employer shall use any motor vehicle equipment having an obstructed view to the rear unless:

(i) [t]he vehicle has a reverse signal alarm audible above the surrounding noise level[;] or:
(ii) [t]he vehicle is backed up only when an observer signals that it is safe to do so.

tributors of tractors and trailers such as those involved in this case can be found liable for failing to install safety equipment when these products are manufactured. Accordingly, for all the above reasons, we reverse the district court's granting of summary judgment against Plaintiff's strict products liability claims in favor of the manufacturers and sellers of the tractor and trailer.

### Negligence

■ We review the district court's decision granting summary judgment as to Plaintiff's negligence claims under the same standard of review incorporated above. Before liability can be found in a negligence action, "[t]he court must determine *as a matter of law* whether a particular defendant owes a duty to a particular plaintiff." *Calkins,* 110 N.M. at 62, 792 P.2d at 39 (emphasis in original). Given that our preceding discussion addressing Plaintiff's strict products liability claims is grounded on the fact that manufacturers have a duty to produce products which do not constitute an unreasonable risk of injury, there is no question but that the existence of that same duty requires reversal of the district court's grant of summary judgment claims as well. *See Moreno v. Marrs,* 102 N.M. 373, 379–80, 695 P.2d 1322, 1328–29 (Ct.App.1984) (whether the theory for recovery is based on negligence, strict liability for an abnormally dangerous condition or strict products liability; unless the duty has been breached, there may be no recovery), *cert. quashed sub nom. Corral, Inc. v. Marris,* 102 N.M. 412, 696 P.2d 1005 (1985). In the present case, whether this duty was breached, resulting in compensable negligence, is a question of fact proper for jury determination. *Cross v. City of Clovis,* 107 N.M. 251, 255, 755 P.2d 589, 593 (1988) ("Because the issue of breach and proximate cause cannot be decided as a matter of law, the trial court erred in removing those issues from the jury."). Accordingly, we reverse the district court's granting of summary judgments as to the negligence claims against the manufacturers and distributors of the tractor and trailer involved in this dispute.

### CONCLUSION

We reverse and remand the district court's granting of summary judgment in favor of Broce, the registered owner of the tractor and trailer. We also reverse and remand the district court decision ordering Carrier's intervention into Plaintiff's wrongful death suit with instructions that the district court not finalize Carrier's intervention until such time as a judgment for damages is ready to be entered. Further, we reverse the district court's denial of Involuntary Plaintiff's motion to dismiss the complaint-in-intervention filed by Carrier for reimbursement of death benefits paid to Plaintiff and to the widow and minor dependents of the deceased worker. And, finally, we reverse the district court's granting of summary judgment as to the strict products liability and negligence claims against Ford, CMI, Richardson, and Rust. We remand for reinstatement of Plaintiff's strict products liability and negligence claims and for further proceedings in accordance with this opinion.

IT IS SO ORDERED.

APODACA and FLORES, JJ., concur.