**Keith SPERRY, Appellant,**

v.

**BAUERMEISTER, INC., Appellee.**

No. 92–3626.

United States Court of Appeals,
Eighth Circuit.

Submitted June 18, 1993.

Decided Sept. 1, 1993.

Robert M. Susman, St. Louis, MO, argued, for appellant.

David Eric Larson, Kansas City, MO, argued (Kristine S. Focht, on the brief), for appellee.

Before WOLLMAN and LOKEN, Circuit Judges, and HUNTER,* Senior District Judge.

WOLLMAN, Circuit Judge.

Keith Sperry appeals from the district court's [1] order granting Bauermeister, Inc.'s motion for summary judgment in a products liability action for personal injuries. We affirm.

## I.

In 1988, Sperry performed maintenance work for Spicecraft, Inc., a spice milling company. Sperry operated and cleaned the milling system used to grind spices. The milling system is cleaned by scraping the upper portion of the unit and then the lower portion, which contains a hopper. Then the airlock, located below the hopper, is removed and the auger, which conveys the product from the hopper to the sifter, is run backwards while the pipes leading from the auger to the sifter are tapped with a hammer to remove residue. While cleaning the mill on September 2, 1988, Sperry removed the airlock from the system. He then reached into a lower chamber with his right hand to clean out spices caked on the sides of the chamber. As Sperry was reaching into the lower chamber, his hand came into contact with the rotating auger, which amputated three fingers.

Bauermeister designs and sells grinding and mixing equipment to food and chemical companies. In 1981, Spicecraft purchased from Bauermeister the spice grinding and dust control mechanism that was installed in the mill that injured Sperry (the new Bauer Mill). This mechanism included the airlock and several parts connected with it, but Bauermeister did not supply the auger or any other parts located below the airlock.

Bauermeister shipped the parts to Spicecraft, and Spicecraft personnel assembled the new mill without consulting Bauermeister.

Bauermeister had offered to sell to Spicecraft a more complete system that included electrical controls and an interlock safeguard which would prevent operation of the auger when the airlock was opened or removed. Spicecraft rejected this offer. Triplett Electric designed and installed the electrical system for the new mill according to Spicecraft's specifications. Spicecraft requested that the design include a manual override of the interlock safeguard.

Sperry filed this diversity action in district court based upon strict liability and negligence, alleging a design defect and failure to warn. The district court granted Bauermeister's motion for summary judgment. *Sperry v. Bauermeister, Inc.*, 804 F.Supp. 1134 (E.D.Mo.1992).

## II.

We review de novo a grant of summary judgment, *Richmond v. Board of Regents of Univ. of Minn.*, 957 F.2d 595, 597 (8th Cir. 1992), applying the same standard that the district court applied. *Meester v. IASD Health Servs. Corp.*, 963 F.2d 194, 196 (8th Cir.1992). We must decide whether the record, when viewed in the light most favorable to Sperry, the nonmoving party, shows that there is no genuine issue of material fact and that Bauermeister, the moving party, is entitled to judgment as a matter of law. *Cole v. Bone*, 993 F.2d 1328, 1331 (8th Cir.1993). Because this is a diversity case, we review state law questions de novo. *Salve Regina College v. Russell*, 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991).

## III.

We apply the substantive law of Missouri to this case. *Wolgin v. Simon*, 722 F.2d 389, 391 (8th Cir.1983). Under Missouri law, a plaintiff seeking to recover in

---

* The HONORABLE ELMO B. HUNTER, Senior United States District Judge for the Western District of Missouri, sitting by designation.

1. The Honorable Stephen N. Limbaugh, United States District Judge for the Eastern District of Missouri.

strict liability for defective design must prove that (1) the product was defective and unreasonably dangerous when put to a reasonably anticipated use and (2) the plaintiff suffered damage as a direct result of the defect. *Linegar v. Armour of Am., Inc.,* 909 F.2d 1150, 1152–53 (8th Cir.1990); *Lewis v. Envirotech,* 674 S.W.2d 105, 110 (Mo.Ct.App. 1984). A supplier is not liable unless the product is defective at the time it leaves the supplier's control and enters the stream of commerce. *Lewis,* 674 S.W.2d at 110. To recover under a cause of action for negligent design, a plaintiff must prove that the defendant breached its duty of care in designing the product and that this breach was the proximate cause of the plaintiff's injury. *Blevins v. Cushman Motors,* 551 S.W.2d 602, 608 (Mo.1977) (en banc).

■ Sperry cannot recover under either of his design defect theories because there is no evidence that Bauermeister supplied or designed a defective product. There is no evidence that the component parts that Bauermeister sold to Spicecraft were defective at the time of sale. Although Sperry alleges that the mill was defective because it did not contain an interlock system or warning light, this allegation does not relate to any part that Bauermeister sold to Spicecraft. It was Spicecraft's decision to install an electrical system that contained no warning light and which included a manual override of the interlock system. Moreover, Bauermeister did not design, supply, or install the auger that amputated Sperry's fingers.

Sperry alleges that Bauermeister was responsible for the overall design of the system. Bauermeister did not design the milling system, however, having supplied only component parts to Spicecraft. Although Tim Hardin, a Bauermeister employee, referred to the component parts Bauermeister sold to Spicecraft as a "spice grinding system," the new Bauer Mill was a series of several systems. In *Sperry v. Bauermeister, Inc.,* 786 F.Supp. 1512, 1517 (E.D.Mo.1992), the district court, in ruling upon Bauermeister's third-party complaint against the supplier of the airlock for the mill, held that under Missouri law suppliers of nondefective component parts are not responsible for acci-

dents that result when the parts are integrated into a larger system that the component part supplier did not design or build. We agree with the district court's analysis of Missouri law. Accordingly, Bauermeister's sale of a single component of a series of systems did not make it responsible for the overall design of the new Bauer Mill. *See also Childress v. Gresen Mfg. Co.,* 888 F.2d 45, 49 (6th Cir.1989) (under Michigan law component part supplier has no duty to analyze design of completed machine incorporating supplier's nondefective component part); *Koonce v. Quaker Safety Prods & Mfg. Co.,* 798 F.2d 700, 715 (5th Cir.1986) (under Texas law supplier of nondefective component part not liable when defect results from integration of part into another product); *Cropper v. Rego Distrib. Ctr., Inc.,* 542 F.Supp. 1142, 1156 (D.Del.1982) (under Delaware law component part supplier not liable when incorporation of part creates a dangerous condition); *Wright v. Federal Mach. Co.,* 535 F.Supp. 645, 649 (E.D.Pa.1982) (under Pennsylvania law supplier of component part not liable for injuries caused by defective design of machine into which part incorporated).

## IV.

■ To recover under Missouri law in strict liability for failure to warn, a plaintiff must prove that (1) the defendant transferred a product in the course of its business; (2) the product was used in a manner reasonably anticipated; (3) the product was unreasonably dangerous when put to a reasonably anticipated use without knowledge of its dangerous characteristic; and (4) the plaintiff's damage was a direct result of the product being sold without an adequate warning. *Nesselrode v. Executive Beechcraft, Inc.,* 707 S.W.2d 371, 382 (Mo.1986) (en banc); *Spuhl v. Shiley, Inc.,* 795 S.W.2d 573, 577 (Mo.Ct. App.1990). Missouri also recognizes a cause of action for negligent failure to warn. *Spuhl,* 795 S.W.2d at 580. An essential element under both theories is product failure or malfunction. *Id.*

■ Sperry's failure-to-warn cause of action is foreclosed by our recent decision in *Crossfield v. Quality Control Equip. Co.,* 1 F.3d 701 (8th Cir.1993). There, the plaintiff

was injured when her glove became entangled in a chain attached to a chitterling cleaning machine. Quality Control Equipment Company manufactured and supplied the chain, which itself was not defective. In holding that Quality Control was not liable for Crossfield's injury under either a strict liability or negligent failure-to-warn theory of recovery, we noted the similarity between *Crossfield* and *Sperry:*

> In both situations, the defendants supplied component parts which were in and of themselves non-defective and which did not fail to perform as designed. An injury only occurred after the component parts were integrated into a greater machine system that contained a design defect. Furthermore, the integrated machine was designed and assembled by someone other than the component part supplier.

*Crossfield,* 1 F.3d at 705.

Accordingly, Sperry cannot recover under either failure to warn theory because the record contains no evidence that the spice grinding and dust control components Bauermeister supplied to Spicecraft were defective or that they malfunctioned. Sperry's injury resulted from a defect—the absence of an interlock safety or warning light—in the overall design of the new Bauer Mill. This defect, if such it was, was not created by Bauermeister, however, for Bauermeister had nothing to do with the design of the mill.

Sperry's motion to supplement the record is denied, as is Bauermeister's motion to strike Sperry's appendix.

The district court's order is affirmed.