Marjorie WELSH, Plaintiff–Appellant,

v.

BOWLING ELECTRIC MACHINERY,
INC., Defendant–Respondent.

No. 18955.

Missouri Court of Appeals,
Southern District,
Division Two.

April 29, 1994.

William B. Smith, Nancy E. Emmel, Dubail Judge, P.C., St. Louis, for plaintiff-appellant.

David T. Welch, Phillips, McElyea, Walker & Carpenter, P.C., Camdenton, for defendant-respondent.

GARRISON, Judge.

Plaintiff appeals from the trial court's order sustaining a motion for summary judgment filed by Respondent, Bowling Electric Machinery, Inc. (Bowling Electric). In the underlying suit, Plaintiff alleged that she was injured on June 24, 1990 as the result of an accident involving a tram. The tram was used to convey passengers at a vertical angle between a boat dock on Lake of the Ozarks and a restaurant known as the Old Swiss Village. At the time of the accident, Plaintiff was riding in the tram which was descending toward the lake when it increased in speed causing Plaintiff to be thrown into the lake water below.

From the meager record before us, it appears that the tram consisted of a car which was raised and lowered on a track. Its movement was controlled by a cable which caused the car to descend and ascend the hill and which was attached to rotating drums located at each end of the track.

The tram was built by Gerald Havener (Havener) for Larry Wilkerson (Wilkerson), who operated the restaurant. Havener purchased some of the component parts for the tram from Bowling Electric. Those components consisted of a drive motor, an electrical control box, an electromagnetic brake, and a gearbox together with a wiring diagram. Plaintiff acknowledges that Havener designed all of the tram except the parts furnished by Bowling Electric. There is no evidence, however, that Bowling designed the parts it furnished, but instead it apparently supplied the parts meeting the specifications requested by Havener.[1]

---

1. The record indicated that Havener, in addition to requesting a control box, gearbox and electro- magnetic brake, specified the horsepower of the motor, the speed desired, the type of motor in-

The electrical control box provided power for the motor, which in turn was connected to the gearbox. The electromagnetic brake, which was attached to the electric drive motor, served a dual function. If power to the motor was interrupted for any reason, the brake would lock the gearbox, causing the tram to stop. Additionally, there were devices called "whisker switches" at the top and bottom of the tram track which were activated when the car touched them and caused the car to consistently stop in the same place for loading and unloading.[2]

There is no contention that any of the components supplied by Bowling Electric failed to function properly. Rather, the tram failed due to an inadequacy in the upper lift mechanism because the cable drum assembly and the supporting structure were inadequate to maintain the correct alignment of the mechanical components. We gather from the record that a structural failure at the point of the upper cable drum permitted it to freewheel, which caused the car to descend faster than normal, throwing the occupants out upon reaching the bottom.

Plaintiff filed suit against Havener, Wilkerson and Bowling Electric. The claims against Wilkerson and Havener were settled, leaving Bowling Electric as the sole defendant. Summarized, Plaintiff's theories against Bowling Electric were strict liability for design defects concerning the component parts which rendered the tram defective and unreasonably dangerous; strict liability for failure to warn; negligent design, assembly and sale of the component parts, as well as failure to warn; and breach of express and implied warranties.

Central to Plaintiff's theories is the contention that Bowling Electric is liable for failing to design and include an independent safety mechanism in its component parts. In this regard, Plaintiff contends that Bowling Electric should have designed and provided devices to be attached to the tram car which would sense increased speed of the car or would permit passengers to activate a switch,

which in turn would activate the electromagnetic brake, thereby stopping the motor and also activating a mechanical stopping device between the car and the track.

## STANDARD OF REVIEW

In considering an appeal from the entry of a summary judgment, an appellate court reviews the record in the light most favorable to the party against whom the judgment is entered. *ITT Commercial Finance v. Mid–America Marine*, 854 S.W.2d 371, 376 (Mo. banc 1993). The review is essentially *de novo* with the appellate court employing the same tests as should be employed by the trial court in determining the propriety of the motion. *Id.* Whether the summary judgment motion should be sustained is purely an issue of law. *Id.* Therefore, where the motion for summary judgment and the response thereto show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law, summary judgment is to be entered in favor of the moving party. Rule 74.04(c)(3), V.A.M.R.

Where the moving party is "a defending party" who does not bear the burden of persuasion at trial, that party need not controvert each element of the non-movant's claim in order to establish a right to summary judgment. *ITT Commercial Finance v. Mid–America Marine*, 854 S.W.2d at 381. Rather, a "defending party" may establish a right to judgment by showing among other things, that there is no genuine issue concerning any one of the necessary elements of the claimant's case. *Id.*

## DISCUSSION

In its motion for summary judgment, Bowling Electric contended that there were no genuine issues of fact concerning its liability. We agree with the trial court that Bowling Electric was entitled to a judgment as a matter of law and affirm the entry of the summary judgment.

cluding the voltage, and the gear ratio and shaft size for the gearbox.

2. Although Havener initially requested that Bowling Electric furnish the whisker switches, he eventually purchased them elsewhere because of a price savings.

In Missouri, a plaintiff has three theories of recovery available in a products liability case: strict liability, negligence, and breach of warranty. *Ragland Mills v. General Motors,* 763 S.W.2d 357, 359 (Mo.App. 1989). In the instant case, Plaintiff pleads alternative claims under each theory.

## A. STRICT LIABILITY AND NEGLIGENCE FOR DESIGNING AND FURNISHING THE PARTS

In order to recover under a strict liability theory in a products case, a plaintiff must prove, among other things, that "[t]he product was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use, and the plaintiff was damaged as a direct result of such defective condition as existed when the product was sold." § 537.760.[3] Under this theory, the alleged defect must have existed when it left defendant's control and entered the stream of commerce. *Sperry v. Bauermeister, Inc.,* 4 F.3d 596, 598 (8th Cir.1993); *Lewis v. Envirotech Corp.,* 674 S.W.2d 105, 110 (Mo. App.1984). In the instant case, there is no evidence that the component parts supplied by Bowling were defective when they were sold to Havener. In fact, there was no evidence that the components supplied by Bowling failed, did not function as they were designed to do, or caused the initial failure in the tram system.[4]

Plaintiff's theory is that Bowling Electric failed to incorporate safety features into its components beyond those specified by Havener. She argues that a mechanical failure of the tram from independent causes, such as

occurred here, was foreseeable and that Bowling should have, but failed to, design and furnish, as a part of its components, an electrical system which would activate the electromagnetic brake if triggered by a passenger or if the car exceeded a certain speed. In either circumstance, Plaintiff contends that the activation of the electromagnetic brake should have also activated a mechanical braking device on the car. Therefore, the essence of Plaintiff's complaint is not that Bowling Electric's components were defective and created an unreasonable danger, but that Bowling failed to design or furnish parts which would safeguard against a danger created by Havener's faulty design and construction of the other portions of the tram.

Under the facts of this case, we believe that, as a matter of law, Bowling had no duty to design or furnish those additional features in the components furnished by it. Havener specified the components he desired without inviting, requesting or indicating a desire or need that Bowling participate in the design of the remaining portions of the tram.[5] There was no evidence that Bowling was furnished with the plans, design, or information concerning the manner in which the remaining portions of the tram would be constructed. There were no industry standards which suggested that an independent stopping device should be included in the parts furnished by Bowling Electric. Bowling was not asked to supply any stopping devices beyond the electromagnetic brake. The additional components referred to by Plaintiff would have been attached to the tram car, whereas those furnished by Bowl-

---

3. All references to statutes are to RSMo Cum. Supp.1987, unless otherwise noted.

4. Plaintiff acknowledges that Bowling's component parts were not defective when delivered, but argues that their design was "improper and inadequate to prevent further and serious injury to Appellant once the tram malfunctioned," and cites *Cryts v. Ford Motor Co.,* 571 S.W.2d 683 (Mo.App.1978), and *McDowell v. Kawasaki Motors Corp. U.S.A.,* 799 S.W.2d 854 (Mo.App.1990), in support. She argues that these cases authorize a recovery under a "second collision" or "injury enhancement" theory. It is true that these cases recognize a recovery for an enhanced injury caused by striking an object (*Cryts*—automobile armrest; *McDowell*—support bracket on

motorcycle) which would not have produced an injury in the absence of an intervening cause which set the injury producing cycle into action. In both cases, however, the suit was against the designer and manufacturer of the assembled, finished product as opposed to the supplier of the individual component part involved and the component actually produced direct injury to the plaintiff. We believe these factors distinguish those cases from the instant case and that they do not change the result in this case.

5. The record contained an indication that Havener had designed and installed a safety mechanism which was intended to mechanically stop the tram in the event the cable became slack, but it did not function to prevent this accident.

ing Electric pursuant to Havener's request were not directly attached to the car itself.[6] Therefore, use of the additional parts would have depended on Havener incorporating them into the design of the car. The record, however, indicates that Havener had intentionally omitted an unspecified safety device utilized on other trams because "[i]t looked too complicated and looked too prone to failure and maintenance problems to use."

We have not been cited to Missouri cases deciding the liability of the supplier of component parts under similar facts and our own research has revealed none. Other courts have, however, considered the liability of suppliers of non-defective component parts.

In *Sperry v. Bauermeister, Inc.*, 786 F.Supp. 1512 (E.D.Mo.1992) (*Sperry I*), an airlock supplied by the defendant was incorporated by the purchaser into a milling system which itself was defectively designed. There was no contention that the airlock was defective, but rather the evidence indicated that the defects were in the milling system because of the lack of an interlock which would prevent operation of an auger when the airlock was opened or had been removed. Therefore, the argument was that when the airlock was opened to permit a person to reach into the area containing an auger, there should have been an interlock which prevented the auger from operating. The court sustained defendant's motion for summary judgment, holding that the airlock itself was not defective and that as a matter of law the supplier of the airlock "can not be held liable for the incorporation of its non-defective component part into a milling system defectively designed." *Id.* at 1518.

*Sperry v. Bauermeister, Inc.*, 804 F.Supp. 1134 (E.D.Mo.1992) (*Sperry II*), arose from the same accident as *Sperry I*. In *Sperry II*, it was indicated that plaintiff's employer (Spicecraft) assembled the mill from component parts purchased from defendant and others. Like the instant case, no technical assistance was requested from or provided by defendant; "the 'product' sold by defendant were [sic] specifically requested compo-

nent parts which were integrated, by a third-party, into a mill"; "Spicecraft simply took different parts and put them together the way it wanted to until it made the complete mill system"; there was no evidence that any of the component parts were defective when sold or that they were the proximate cause of plaintiff's injury; the evidence was that the milling system "as a whole was defective because it ... lacked an interlock and/or a warning light"; and there was no evidence that defendant had anything to do with the overall design of the mill. *Id.* at 1139. In holding that a component parts manufacturer cannot be held liable for the incorporation of its non-defective parts into a defectively designed larger mechanical system and that defendant was entitled to a summary judgment, the court said:

> Plaintiff has no evidence that Bauermeister's component parts were in a defective condition unreasonably dangerous for use when sold to Spicecraft or that Bauermeister had the responsibility for the overall design of the mill as a whole, including the installation of an interlock and a warning light.

*Id.* at 1140.

The summary judgment in *Sperry II* was appealed in *Sperry v. Bauermeister, Inc.*, 4 F.3d 596. In affirming the entry of the summary judgment, the Eighth Circuit held that plaintiff could not recover under a design defect theory because there was no evidence that defendant supplied or designed a defective product; there was no evidence that the component parts supplied by defendant were defective at the time of the sale; and the defect in the milling system did not relate to any part sold by defendant and incorporated into the mill by Spicecraft. The court said:

> It was Spicecraft's decision to install an electrical system that contained no warning light and which included a manual override of the interlock system. Moreover, Bauermeister did not design, supply, or install the auger that amputated Sperry's fingers.

---

6. We gather that the only connection between the components furnished by Bowling and the tram car was that the electric motor and gearbox were mechanically attached to the apparatus which controlled the movement of the cable, which in turn was attached to the car.

Sperry alleges that Bauermeister was responsible for the overall design of the system. Bauermeister did not design the milling system, however, having supplied only component parts to Spicecraft.... Bauermeister's sale of a single component of a series of systems did not make it responsible for the overall design of the ... Mill.

*Id.* at 598.

In *Mayberry v. Akron Rubber Machinery Corp.,* 483 F.Supp. 407, 413 (D.C.Okla.1979), the court said:

Where a supplier furnishes a component part free of defects and without knowledge of the design of the end product, strict liability should not be imposed on the supplier for injury resulting from the end product design. For example, strict liability should not extend to the manufacturer or supplier of a rotary saw blade free of defects when it is determined a subsequent manufacturer of the rotary table saw failed to incorporate a common safety guard in its exclusive design.

Other courts have also held that a supplier who did not design the finished product cannot be held liable for providing a component part which is specially produced to the specifications of the larger machine manufacturer. *See Crossfield v. Quality Control Equipment Co., Inc.,* 1 F.3d 701, 706 (8th Cir.1993); *Childress v. Gresen Manufacturing Co.,* 888 F.2d 45, 49 (6th Cir.1989); *Koonce v. Quaker Safety Products and Manufacturing Co.,* 798 F.2d 700, 715–16 (5th Cir.1986).

■ We are persuaded that Bowling Electric, under the facts of this case, was not liable as a matter of law under a theory of strict liability for designing or furnishing these component parts. As in the cases discussed above, there is no evidence in the instant case that the parts supplied by Bowling were defective when sold to Havener or that Bowling had any responsibility for the design of the tram as a whole, and it was further Havener's (not Bowling's) decision to install the component parts without other safety devices.

■ Plaintiff also seeks to recover on a negligence theory, alleging that Bowling negligently designed, assembled and sold the electrical unit without an independent stopping device because the failure of the tram from independent causes and the need for such a stopping mechanism or backup brake were foreseeable. We believe that Bowling was also entitled to a judgment as a matter of law on the negligence theory for the same reasons specified above with reference to the strict liability theory. *See Sperry v. Bauermeister,* 4 F.3d at 598, *Sperry I* and *Sperry II.* In *Jordan v. Whiting Corp.,* 49 Mich. App. 481, 212 N.W.2d 324, 328 (1973), the court said:

The obligation that generates the duty to avoid injury to another which is reasonably foreseeable does not—at least yet—extend to the anticipation of how manufactured components not in and of themselves dangerous or defective can become potentially dangerous dependent upon the nature of their integration into a unit designed, assembled, installed, and sold by another.

Under this record there is also no genuine issue of fact concerning Bowling's liability for the design or furnishing of the parts on a negligence theory.

### B. FAILURE TO WARN

■ Plaintiff also seeks to recover for failure to warn under both negligence and strict liability theories. Section 537.760 authorizes recovery under strict liability for failure to warn based on evidence that "[t]he product was then unreasonably dangerous when put to a reasonably anticipated use without knowledge of its characteristics, and the plaintiff was damaged as a direct result of the product being sold without an adequate warning."

■ Where, as in the instant case, there is no evidence that the component parts were defective or that they malfunctioned, but rather that the injury occurred as a result of the overall design of the machine or mechanism, a summary judgment in favor of the component parts supplier is authorized. *Sperry v. Bauermeister, Inc.,* 4 F.3d 596, 599 (8th Cir.1993). In *Crossfield v. Quality Control Equipment Co., Inc.,* 1 F.3d at 704, the court held that the supplier of component parts was entitled to a judgment as a matter

of law where there was no evidence that the component parts malfunctioned and the dangerousness arose from the design of the machine and not from the component parts alone. The court said:

> Therefore, the primary duty was owed by the designer of the machine, not the supplier of only one component part, in itself a non-defective element.
>
> To impose responsibility on the supplier of the chain in the context of the larger defectively designed machine system would simply extend liability too far. This would mean that suppliers would be required to hire machine design experts to scrutinize machine systems that the supplier had no role in developing. Suppliers would be forced to provide modifications and attach warnings on machines which they never designed nor manufactured. Mere suppliers cannot be expected to guarantee the safety of other manufacturers' machinery.

In *Frazier v. Materials Transportation Co.,* 609 F.Supp. 933, 935 (D.C.Pa.1985), the court said:

> Suppliers of component parts, no matter how small or insignificant, should not be held to inquire into their ultimate use and foresee all possible applications in order to satisfy a duty to warn of potential danger associated with the finished product.

In *Searls v. Doe,* 29 Ohio App.3d 309, 311, 29 OBR 408, 505 N.E.2d 287, 289 (1986), the court said that component parts suppliers "were not required to procure plans of the entire system, review those plans, and independently determine whether their respective component parts would function in a safe fashion" and therefore had no duty to warn plaintiff of potentially dangerous or defective conditions.

We find these authorities persuasive when applied to the facts of the instant case. To hold otherwise would be the equivalent of requiring a component supplier to warn of defects in the completed machine or mechanism when it did not participate in the design of the integrated machine and the parts furnished by it were not defective and did not cause the machine's failure. This we are unwilling to do. The trial court also correctly entered summary judgment on Plaintiff's claim based on these theories.

## C. BREACH OF WARRANTY

Plaintiff's final theory of recovery is based on breach of express and implied warranties. Plaintiff's point relied on states that there was a genuine issue of material fact concerning "whether respondent had the duty to warrant the safety of the tram's component parts," and she argues that Bowling "had a duty to warrant the safety of the product it provided." There is no indication that an express warranty was made upon which Plaintiff could rely, and this deficiency is not cured by consideration of whether a duty to do so existed.

 There also appears to be no genuine issue of fact concerning whether Bowling is liable under an implied warranty. Although not clear, it appears that Plaintiff refers to an implied warranty of fitness for a particular purpose. The availability of such an implied warranty depends on facts showing that the buyer relied upon the skill, judgment and experience of the seller to select an article suitable for the buyer's needs. *Interstate Folding Box Co. v. Hodge Chile Co.,* 334 S.W.2d 408, 414 (Mo.App. 1960). The mere fact of knowledge by the seller of the purpose for which a buyer desires to purchase an article is not alone sufficient to show a reliance by the buyer upon the skill, judgment and experience of the seller so as to raise an implied warranty of fitness. *Id.* In the instant case, the facts presented to the trial court were that Havener informed Bowling Electric of the type and specifications for the component parts desired. There is no indication that Havener communicated, in any way, to Bowling Electric that he expected any kind of a brake or locking device other than the electromagnetic brake. Accordingly, under these facts, we are unable to conclude that the trial court erred in sustaining the motion for summary judgment on the warranty issues.

The trial court's order granting the motion for summary judgment is affirmed.

FLANIGAN, P.J., and CROW, J., concur.