**Ronald BAKER, et al., Plaintiffs,**

v.

**BRIDGESTONE/FIRESTONE CO., et al., Defendants.**

No. 95–4135–CV–C–5.

United States District Court,
W.D. Missouri,
Central Division.

Dec. 31, 1996.

Aaron Neil Woods, Risjord & James, Overland Park, KS, for plaintiffs.

Robert A. Horn, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, MO, H.A. Walther, Columbia, MO, for Bridgestone/Firestone, Inc.

James E. McDaniel, Margaret M. Mooney, Lashly & Baer, P.C., St. Louis, MO, for General Motors Corp.

## ORDER

LAUGHREY, District Judge.

### I. BACKGROUND

This case involves a product liability claim by Ronald Baker and his wife. Ronald Baker was injured while he was changing a tire on a tool truck. The truck wheel explosively separated after the tire was inflated and Plaintiff was struck with the component parts of the wheel. The facts are clear that the wheel which caused Plaintiff's injuries was not an original piece of equipment on the tool truck. The tool truck itself was assembled by a Chevrolet dealer. That dealership purchased the chassis from GM. When the chassis was delivered to the Chevrolet dealer on August 22, 1983, it consisted of a power train and chassis, a front axle with two front wheels and a single rear-drive axle with four wheels. The wheel which injured Plaintiff was manufactured in 1984, at least one year after the incomplete chassis was delivered to the Chevrolet dealer, making it impossible for the wheel to be on the chassis at the time it was put in the stream of commerce. Currently before the Court is the Defendant's Motion for Summary Judgment alleging that

the Plaintiff cannot make a submissible case because there is no proof that GM sold the wheel which caused injury to the Plaintiff.

## II. SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). To defeat a properly supported summary judgment motion, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." *See* Fed.R.Civ.P. 56(e). An issue is "genuine" only if the evidence is such that a reasonable juror could find for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Equimark Commercial Fin. Co. v. C.I.T. Fin. Servs. Corp.,* 812 F.2d 141, 144 (3d Cir.1987). Where the nonmoving party bears the burden of proof, the burden upon that party is to "make a showing sufficient to establish the existence of [every] element essential to that party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

## III. DISCUSSION

■ Ronald Baker's claim against GM is based on strict liability and negligence. In Missouri, a Plaintiff alleging strict liability and negligence in a product liability case must show that the defective product was placed in the stream of commerce by the defendant and that it was defective at that time. *Bailey v. Innovative Management & Inv., Inc.,* 916 S.W.2d 805 (Mo.App.1995); *Gunderson v. Sani–Kem Corp.,* 674 S.W.2d 665, 668 (Mo.App.1984); *Welsh v. Bowling Elec. Machinery, Inc.,* 875 S.W.2d 569, 571 (Mo.App.1994). GM argues that the Plaintiff will not be able to present any evidence at trial to show that the allegedly defective wheel was on the incomplete chassis when it was shipped by GM on August 22, 1983, and, therefore, is unable to show that GM placed the defective product in the stream of commerce. Plaintiff correctly points out, howev-

er, that the law does not require the Plaintiff to show that the wheel was on the chassis at the time the chassis was put in the stream of commerce. He need only show that the wheel was placed in the stream of commerce by GM. Hence, the Motion for Summary Judgment must be denied if there is a genuine issue of material fact as to whether or not GM placed the injury causing wheel in the stream of commerce.

In opposition to the motion for summary judgment, Plaintiff presented evidence that only GM uses the ten-bolt hole, 8 3/4 inch mounting circle found on the wheel which caused Plaintiff's injuries. On the other hand, GM is not the only company that sells wheels for GM cars. Plaintiff also showed that the Firestone part number on the injury causing wheel corresponds to a GM part number. It is clear, however, that the GM part number was not stamped on the disk in question. Plaintiff also pointed to an affidavit of Robert E. Lee who is a past employee of Firestone, the admitted manufacturer of the wheel in question. Mr. Lee stated: "[M]ore than 95 per cent of all Firestone multi-piece rim components, including the RH5, have been sold to original equipment vehicle manufacturers for installation as original factory equipment upon the trucks and other vehicles produced by these manufacturers." (Ex. F to Pl. Mem. of Law in Opp. to Gen. Motors Corp. Mot. for Sremm. J.) That does not mean that 95 per cent of all replacement wheels are sold by GM. It only means that 95 per cent of Firestone wheels are used as original equipment. There is also the affidavit of Ottfried Hahn, who expressed the opinion that the rim base which injured the Plaintiff was sold by GM. This wheel was found on a chassis admittedly manufactured by GM and that chassis did not have a spare tire when shipped by GM, raising the possibility that a spare tire was added by the Chevrolet dealership ostensibly using component parts purchased from GM.

■ There is very little particularized evidence in this case to show that GM placed the wheel which injured the Plaintiff in the stream of commerce. Nor has there been a showing by the Plaintiff why more particularized evidence about the origin of wheel is

unavailable. As a general rule, statistical evidence alone is insufficient to avoid a motion for directed verdict and necessarily a motion for a summary judgment. *Smith v. Rapid Transit*, 317 Mass. 469, 58 N.E.2d 754 (1945); Rosenberg, *The Causal Connection in Mass Explosion Cases: A "Public Law" Vision of the Tort System*, 97 Har. L.Rev. 849, 855–59 (1984). Not all commentators have agreed on this approach. *See* Kaye, *The Limits of the Preponderance of Evidence Standard Justifiably Naked Statistical Evidence in Multiple Causation*, (1982 Am. B. Found. Res. J. 487); *Wetzel v. Eaton Corp.*, 62 F.R.D. 22 (D.C.Minn.1973). This rule is founded in large part on the desirability of forcing plaintiffs to identify specific and particularized evidence to support their case. Tribe, *Trial by Mathematics, Precision & Ritual in the Legal Process*, 84 Harv. L.Rev. 1329 (1971). Otherwise, Plaintiffs could merely show that 95 per cent of replacement wheels are sold by one Defendant and therefore in 100 per cent of all cases that Defendant would be liable unless there was definitive evidence that the defendant did not sell the wheel. Likewise, the five per cent manufacturer would never be liable unless there was definitive evidence that it did sell the wheel. Such an approach reduces a plaintiff's burden substantially and the 95 per cent supplier is responsible for more harm than it caused. This reluctance to recognize statistical probability as a basis for a verdict has been eroded in recent times when there are insurmountable obstacles to producing particularized proof, *e.g., In re DES Cases*, 789 F.Supp. 552 (1992); *Causation, Responsibility. Risk, Probability Naked Statistics & Proof. Pruning the Bramble Bush by Clarifying the Concept*, 73 Iowa L.Rev. 1001, 1073–77 (1988). Plaintiff in this case has shown no such obstacle. On the other hand, Plaintiff has presented some additional evidence linking the wheel to GM and because this litigation is at such an early stage, *see Kramer v. Weedhopper of Utah, Inc.*, 141 Ill.App.3d 217, 95 Ill.Dec. 631, 490 N.E.2d 104 (1986) and because the evidence must be viewed in the light most favorable to the Plaintiff, I deny the Defendant's motion for summary judgment.

My opinion is fortified by one of the alternative theories of recovery suggested by the Plaintiff. Plaintiff's theory is that GM had an obligation to warn purchasers when it sold the incomplete chassis with CR3 wheels. Plaintiff alleges that the wheel which injured him was a CR3 wheel, identical to the wheel which GM put on the original chassis. If GM had included a warning with the chassis, Plaintiff would have been on notice about the defect in CR3 wheels even if GM did not actually sell it. The evidence is clear that GM did insert the CR3 wheels in the stream of commerce when it sold the incomplete chassis and, according to Plaintiff, the evidence will show that the warning would have prevented the Plaintiff's injuries.

The Court does not address the legal viability of this theory [1] because there is a clear factual dispute concerning an issue critical to the theory. GM claims that the wheel which injured the Plaintiff was a CR2 (Def. Ex. D attached to Def. Resp. to Def. Mot. For Summ. J.). Baker testified that the wheel which explosively separated had two rings, indicating a CR3 wheel. This factual dispute is a further reason for denying the motion for summary judgment.

## IV. RELIEF ORDERED

It is hereby ORDERED that Defendant's Motion for Summary Judgment (Doc. # 32) is DENIED.

---

**1.** GM's reliance on *Baughman v. Gen. Motors Corp.*, 780 F.2d 1131 (4th Cir.1986) is not dispositive of the issue because GM did have control over a CR3 wheel identical to the wheel which injured plaintiff and did place that wheel in the stream of commerce without a warning. *Baughman* was based in part on the inability of the defendant to test or evaluate or warn about a product which it had never sold. Plaintiff's theory also raises the question of whether Firestone or GM would have been in a better position to warn. *See Verge v. Ford Motor Co.*, 581 F.2d 384 (3d Cir.1978); *Fernandez v. Ford Motor Co.*, 118 N.M. 100, 879 P.2d 101 (N.M.App.1994). That question is heavily fact dependent, however, and inappropriate for resolution in a motion for summary judgment.