# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| DEFOREST GIBBS and SHERRYL GIBBS, his wife. | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | C.A. No.: N19C-09-265 ASB |
| 84 LUMBER COMPANY, et al., | ) ) ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION**

Submitted: September 3, 2020
Decided: September 28, 2020

*Upon Consideration of Defendant Union Carbide Corporation's Motion for*
*Summary Judgment*
GRANTED.

Ipek Kurul, Esq., Bartholomew J. Dalton, Esq., Andrew C. Dalton, Esq., Michael C. Dalton, Esq., of Dalton & Associates, P.A., Wilmington, Delaware, and Adam Balick, Esq., Michael Collins Smith, Esq., and Patrick J. Smith, Esq., of Balick & Balick, LLC, Wilmington, Delaware. *Attorneys for Plaintiffs.*

Beth E. Valocch, Esq., Joseph S. Naylor, Esq., of Swartz Campbell, LCC, Wilmington, Delaware. *Attorneys for Defendant, Union Carbide Corporation.*

**Rennie, J.**

# I. INTRODUCTION

Plaintiffs, Deforest Gibbs and Sherryl L. Gibbs ("Plaintiffs") assert claims against multiple defendants, including Defendant, Union Carbide Corporation ("UCC") alleging that Mr. Gibbs suffers from mesothelioma as a result of occupational asbestos exposure. UCC moves for summary judgment on Plaintiffs' design-defect and failure-to-warn claims. After consideration of the parties' written submissions and oral arguments, UCC's Motion for Summary Judgment is **GRANTED**.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Mr. Gibbs' Work History

Plaintiffs reside in South Carolina where Mr. Gibbs worked as a laborer, plumber, and shade tree mechanic for fifty years. Plaintiffs claim that through Mr. Gibbs' various means of employment, he was exposed to asbestos by working with HVAC equipment, hot water heaters, electrical products, valves, drywall, sheetrock, joint compound, caulk, roofing materials, and flooring products.

Mr. Gibbs first began working with sheetrock, joint compounds, and asbestos-containing flooring and ceiling tiles when assisting his father with home renovations as a teenager in the 1960s. The majority of his work with such materials, however, occurred while working with his company, Deforest Company from 1969 to 2019. He also alleges that he was occupationally exposed to asbestos while employed with

2

General Electric Large Steam Turbine Division, as a laborer, from approximately 1969 to 1973, and with General Plumbing, as a plumber, at various job sites and locations in South Carolina from approximately 1973 to 1976.

### B. Union Carbide Corporation

UCC is a diversified chemical company. From 1963 to 1985, UCC manufactured and distributed raw asbestos, called "Calidria," which it sold in bulk to manufacturers of products that incorporate asbestos. Calidria worked well as a bulking agent in joint compound. Mr. Gibbs testified to using several brands of joint compound and sheetrock throughout his career, including United States Gypsum ("U.S. Gypsum"), Georgia-Pacific, and National Gypsum. Additionally, he testified to using floor and ceiling tiles produced by Armstrong Products Company ("Armstrong"). Plaintiffs allege that that UCC supplied raw asbestos to these four manufacturers.

For the purposes of this motion, UCC concedes that *some* of the Georgia-Pacific and National Gypsum joint compound that Mr. Gibbs used during the early-to-mid 1970s *may* have contained Calidria.[1] UCC contends that it never sold production quantities of Calidria to U.S. Gypsum's Chamblee, Georgia plant, which would have been the supplier of joint compound to the South Carolina area where

---

[1] *See* UCC's Memorandum in Support of its Motion for Summary Judgment at 4 [hereinafter "Def.'s Mot."].

Mr. Gibbs resided.[2] Further, UCC does not dispute that it sold Calidria to Armstrong during the relevant period.[3] However, it specifies that during such period, Armstrong sold a variety of flooring products that never contained asbestos, and that the Armstrong acoustical ceiling tiles, described by Mr. Gibbs, never contained asbestos.[4]

### C. Procedural Background

On June 12, 2020, UCC filed a Motion for Summary Judgment ("Motion") and supporting Memorandum.[5] On July 17, 2020, Plaintiffs filed their Memorandum in Opposition ("Response").[6] On August 10, 2020, UCC filed its Reply.[7] This Court heard oral argument on September 3, 2020. This matter is ripe for review.

### III.   STANDARD OF REVIEW

Delaware Superior Court Civil Rule 56 requires that summary judgment be granted where the moving party demonstrates that there are no genuine issues of material fact.[8] After the movant meets this burden, the burden then shifts to the non-movant to demonstrate the "existence of one or more genuine issues of material

---

[2] *See* Def.'s Mot. at 3.
[3] *See* UCC's Reply in Support of its Motion for Summary Judgment at 5 [hereinafter "Def.'s Reply"].
[4] *See id.*
[5] *See* UCC's Motion for Summary Judgment; *see also* Def.'s Mot.
[6] *See* Plaintiffs' Memorandum in Opposition to UCC's Motion for Summary Judgment [hereinafter "Pl.s' Resp."].
[7] *See* Def.'s Reply.
[8] Super. Ct. Civ. R. 56(c).

4

fact."[9] Summary judgment will not be granted if there is a material fact in dispute or if it "seems desirable to inquire thoroughly into [the facts] in order to clarify the application of the law to the circumstances."[10] In considering the motions, "[a]ll facts and reasonable inferences must be considered in a light most favorable to the non-moving party."[11] However, the Court shall not "indulge in speculation and conjecture; a motion for summary judgment is decided on the record presented and not on evidence potentially possible."[12]

## IV. DISCUSSION

### A. Plaintiffs' Design-Defect Claim

UCC first requests that this Court grant its Motion related to Plaintiffs' design-defect claim. It argues that Plaintiffs' claim is not actionable, because asbestos is a naturally occurring raw material, and therefore cannot be defectively designed. Plaintiffs concede that under South Carolina law, UCC is entitled to summary judgment on this claim. Therefore, UCC's Motion for Summary Judgment on Plaintiffs' design-defect claim is **GRANTED**.

---

[9] *Quality Elec. Co., Inc. v. E. States Const. Serv., Inc.*, 663 A.2d 488 (Del. 1995). *See* Super. Ct. Civ. R. 56(e); *see also Moore v. Sizemore*, 405 A.2d 679, 681 (Del. 1979).
[10] *Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del. 1962).
[11] *Nutt v. A.C. & S. Co.*, 517 A.2d 690, 692 (Del. Super. 1986).
[12] *In re. Asbestos Litig.*, 509 A.2d 1116 (Del. Super. 1986), *aff'd sub. nom. Nicolet, Inc. v. Nutt*, 525 A.2d (Del. 1987).

## B. Plaintiffs' Failure-to-Warn Claim

UCC next requests that this Court grant its Motion on Plaintiffs' failure-to-warn claim. South Carolina substantive law applies to UCC's Motion. To establish causation in an asbestos claim under South Carolina law, a plaintiff must show that (1) the defendant's product contained asbestos, and (2) that the plaintiff suffered an "actionable exposure" to that product.[13] Exposure is actionable if it satisfies the "frequency, regularity, and proximity test," set forth in *Lohrmann v. Pittsburgh Corning Corp.*,[14] which provides: "[t]o support a reasonable inference of substantial causation from circumstantial evidence, there must be evidence of *exposure to a specific product* on a *regular basis* over some *extended period of time* in *proximity* to where the plaintiff actually worked."[15] A plaintiff's mere "presence in the vicinity of static asbestos is not exposure to asbestos."[16]

In applying the *Lohrmann* test, the Court considers the record evidence against UCC in turn. The Court's following recitations of the facts are construed in the light most favorable to the non-moving Plaintiffs, without engaging in speculation. This Court's consideration of the issues below pertain to UCC's status as a supplier and the application of a "sophisticated user" defense.

---

[13] *Henderson v. Allied Signal, Inc.*, 373 S.C. 179, 185 (2007).
[14] 782 F.2d 1156, 1162 (4th Cir. 1986).
[15] *Henderson*, 373 S.C. at 185 (emphasis added).
[16] *Id.*

### i. *UCC's Duty to Warn*

Under South Carolina product liability law, a manufacturer or a seller of a dangerous product has a duty to provide "an adequate warning"[17] to "the ultimate user of the dangers associated with the use of the product."[18] The duty to warn generally extends to both the immediate purchasers as well as to subsequent purchasers and users.[19] If a plaintiff succeeds in making a showing that no adequate warning was given, liability for his injuries may be imposed on the supplier or seller.

UCC argues that as a supplier, limitations are imposed upon the general duty to warn, under the Restatement (Second) of Torts and the Restatement (Third) of Torts: Product Liability, and accordingly it owed no duty to warn end users, such as Mr. Gibbs, of the hazards associated with Calidria or any of the named manufacturers' finished products.[20] UCC references three legal doctrines in making its argument: (1) the "bulk-supplier" doctrine;[21] (2) the "sophisticated user"

---

[17] *Phillips v. S.C. State Univ.*, No. 2005-UP-320, 2005 WL 7084045, at *4 (S.C. Ct. App. May 12, 2005) (citing *Allen v. Long Mfg. NC, Inc.*, 332 S.C. 422, 505 S.E.2d 354, 357 (S.C. Ct. App. 1998)).

[18] *Lawing v. Univar, USA, Inc.*, 415 S.C. 209, 225, 781 S.E.2d 548, 557 (2015) (citing *Livingston v. Noland Corp.*, 293 S.C. 521, 525 (1987) (citing *Gardner v. Q.H.S., Inc.*, 448 F.2d 238, 242 (4th Cir. 1971) (finding that the duty-to-warn arises when the user may not realize the potential danger of a product))); *see Watson v. Ford Motor Co.*, 389 S.C. 434, 444, 699 S.E.2d 169, 174 (2010) (noting that failure-to-warn actions stem from a user's claim "that he was not adequately warned of dangers inherent to a product.").

[19] *See Lawing*, 415 S.C. at 225.

[20] *See* Def.'s Mot. at 8 (citing Def.'s Mot., Exhibit B at 3–7).

[21] *See* Def.'s Mot., Exhibit B at 4 (citing *Hoffman v. Houghton Chemical Corporation*, 751 N.E.2d 848, 856 (Mass. 2001); quoting *In re Asbestos Litig.*, 542 A.2d 1205, 1211 (Del. Super. 1986) (quoting Restatement (Second) of Torts § 388, cmt. *n*)) ("The bulk-supplier doctrine originates in Section 388, comment n, and is premised on the special difficulties that bulk suppliers face in directly warning foreseeable end users of the dangers of their products . . . . [The] process makes

doctrine;[22] and (3) the "raw material" doctrine.[23] Plaintiffs argue that, even as a supplier, UCC is subject to liability because its warnings to sophisticated intermediaries were inadequate.

## 1. Delaware Case Law

UCC posits the sophisticated user defense as its primary argument in support of summary judgment. UCC relies on three cases decided by the Delaware Superior Court for the proposition that Georgia-Pacific, National Gypsum, U.S. Gypsum, and Armstrong are objectively sophisticated and knowledgeable regarding the hazards of asbestos as a matter of law.[24]

In *Robinson v. Union Carbide*, the Delaware Superior Court granted UCC's motion for summary judgment on the plaintiff's failure-to-warn claim where the

---

it unlikely that supplier warnings will reach foreseeable users. Further, even if such warnings could theoretically reach foreseeable users, the 'multitudinous commercial uses,' to which bulk suppliers are often put would make it 'crushingly burdensome' to require the supplier to provide direct warnings.").

[22] *See* Def.'s Mot., Exhibit B at 4–5 (citing *Taylor v. American Chemistry Council*, 576 F.3d 16, 25-26 (1st Cir. 2009)) ("The sophisticated-user doctrine originates in Section 388, comment k, and is premised on the idea that certain dangers are obvious to a sophisticated user, making a warning superfluous. Under the sophisticated-user doctrine, a supplier is immune from liability where is sells its product to a purchaser—either an intermediary or end user—who knows (or should have known) of the hazards associated with the product. Unlike the bulk-supplier doctrine, this defense applies regardless of whether the supplier warned the immediate purchaser or end user, so long as the immediate purchaser was knowledgeable or sophisticated.").

[23] *See* Def.'s Mot., Exhibit B at 5 ("The 'raw material' doctrine combines elements of both the bulk-supplier and sophisticated-user doctrines . . . although its protections are limited to sellers of naturally occurring raw materials (such as sand, gravel, kerosene or asbestos). Under this doctrine, a supplier who sells a raw material that is subsequently integrated into a manufactured product is not liable for failing to warn end users . . . where the raw material supplier did not exercise control over the fabrication or distribution of [the] finished product.").

[24] *See* Def.'s Mot., Exhibits H, I [hereinafter "*Watson v. Georgia-Pacific, LLC, et al.*"], J [hereinafter "*Tibbett v. A.O. Smith Corporation, et al.*"].

record demonstrated that, "there [were] no genuine issues of material fact regarding Georgia-Pacific's status as a sophisticated intermediary."[25] There the Court applied Ohio law, as the substantive law at issue in the case.

In *Watson v. Georgia-Pacific, LLC*, the plaintiffs alleged that there were genuine issues of material fact concerning Georgia-Pacific's sophistication and knowledge, thereby questioning its status as a "sophisticated user."[26] Similar to *Robinson*, the Delaware Superior Court granted UCC's motion for summary judgment and held that plaintiffs failed to identify any genuine issues of material fact, which indicated that UCC was unable to meet the sophisticated intermediary criteria established by Kansas case law.[27] The Court found that the record established that "Georgia-Pacific was adequately trained, familiar with the product and safe methods of handling it, and was capable of passing its knowledge to consumers."[28]

Finally, in *Tibbett v. A.O. Smith Corporation*, the Delaware Superior Court found that as a bulk-supplier, UCC had no duty to warn sophisticated purchasers under Wisconsin law, where plaintiffs failed to allege that UCC had any involvement

---

[25] *Robinson v. Union Carbide Corp.*, No. CV N17C-06-143 (ASB), 2019 WL 3822531, at *1 (Del. Super. Aug. 15, 2019) (granting UCC's motion for summary judgment where there existed no genuine issues of material fact regarding the applicability of the bulk supplier defense).
[26] *Watson v. Georgia-Pacific, LLC, et al.*, at 4.
[27] *Id.* (citing *Jones v. Hittle Serv., Inc.*, 219 Kan. 627, 549 P.2d 1383 (1976)).
[28] *Id.*

9

in the design, manufacture, distribution or sale of the finished joint compound products at issue in the case.[29]

Unlike in the Delaware cases referred to above, Plaintiffs here do not attempt to present an argument to dispute that any of the named manufacturers are "sophisticated users." Additionally, Plaintiffs do not allege that UCC had any involvement in the design, manufacture, distribution or sale of the finished products at issue. However, the Court cannot grant UCC's Motion based on Delaware case law alone. The Superior Court in each case above reached its finding based on the application of factors or definitions considered under the substantive state law relevant in that action. Accordingly, this Court must also consider whether the "sophisticated user" defense applies under South Carolina law.

## 2. Application of the "Sophisticated User" Defense

The "sophisticated user" doctrine "recognizes that a supplier may rely on an intermediary to provide warnings to the ultimate user *if the reliance is reasonable under the circumstances*."[30] The application of this doctrine "relieve[s] the supplier of liability for failure to warn where it is difficult or even impossible for the supplier

---

[29] *Tibbett v. A.O Smith Corporation, et al.*, at 3–4.

[30] *Lawing v. Univar, USA, Inc.*, 415 S.C. 209, 225–26, 781 S.E.2d 548, 557 (2015) (citing Restatement (Second) of Torts § 388 cmt. *n*)) (emphasis added); *see O'Neal v. Celanese Corp.*, 10 F.3d 249, 251 (4th Cir. 1993) ("The sophisticated user defense is implicated in the situation in which A supplies a chattel to B, B in turn allows C to be exposed to the chattel, C is injured by exposure to the chattel, and C claims that A should be liable to C for A's failure to warn C of the danger.").

to meet its duty to warn the end user . . . , and the supplier therefore relies on the intermediary or employer to [do so]."[31]

Although "[t]he South Carolina Supreme Court has not formally adopted the sophisticated user doctrine[,]"[32] "other courts have applied the sophisticated user and learned intermediary doctrine in cases involving the application of South Carolina law."[33] In *Satterfield v. Morris*,[34] the United States District Court for the District of South Carolina (the "District Court") noted that "[c]ourts generally do not impose liability or a duty to warn on raw materials suppliers, because to do so would force suppliers to closely scrutinize manufacturing processes and products over which they have no control, and at prohibitive expense."[35] Thus, "decisions regarding the use of raw materials . . . are attributable to the manufacturer of the final product[.]"[36]

---

[31] *Grimes v. Young Life, Inc.*, No. CV 8:16-1410-HMH, 2017 WL 10663785, at *4 (D.S.C. May 10, 2017) (citing *Lawing*, 415 S.C. at 781); *see Satterfield v. Morris*, No. CIV.A. 7:11-1514-MGL, 2014 WL 2744687, at *4 (D.S.C. June 17, 2014) (citing *Phillips v. S.C. State Univ.*, No. 2005-UP-320, 2005 WL 7084045, at *5 (S.C. Ct. App. May 12, 2005) (citing *Jacobs v. E.I. du Pont de Nemours & Co.*, 67 F.3d 1219, 1236 (6th Cir. 1995))).

[32] *Grimes*, 2017 WL 10663785, at *4 (citing *Lawing*, 415 S.C. at 557 & n.14).

[33] *Id.* (citing *Bragg v. Hi-Ranger, Inc.*, 319 S.C. 531, 462 S.E.2d 321, 332 (Ct. App. 1995); *Sauls v. Wyeth Pharm., Inc.*, 846 F. Supp. 2d 499, 502 (D.S.C. 2012); *Fisher v. Pelstring*, 817 F. Supp. 2d 791, 811 (D.S.C. 2011)).

[34] No. CIV.A. 7:11-1514-MGL, 2014 WL 2744687 (D.S.C. June 17, 2014) (granting third-party defendant's motion for summary judgment against third-party plaintiff, where third-party defendant was a raw material supplier and component part manufacturer and therefore did not owe a duty to warn).

[35] *Id.* at *3 (citing Restat. (Third) Torts: Prod. Liab., § 5, cmt. *c*).

[36] *Id.* (citing Restat. (Third) Torts: Prod. Liab., § 5 cmt. *c*); *see generally Phillips v. S.C. State Univ.*, No. 2005-UP-320, 2005 WL 7084045 (S.C. Ct. App. May 12, 2005) (affirming summary judgment in favor of supplier defendant where the supplied product was not deemed to be dangerous and where supplier defendant could not be held liable for inadequate warning because the duty to warn should have been fulfilled by the manufacturer under the sophisticated intermediary rule).

11

Without explicitly applying the "sophisticated user" or "learned intermediary" doctrines, the District Court in *Satterfield* ruled, under South Carolina law that a supplier is not liable for harm caused by a final product, into which its component part is integrated, *unless* that component part is defective.[37] Here, Plaintiffs do not make any assertions that the Calidria, supplied by UCC, was defective. In alignment with that same rule, if a component part is not defective, a supplier may still be held liable for failure-to-warn "if the supplier 'substantially participates' in the 'integration of the component into the design of the final product.'"[38] But, Plaintiffs do not make any claims or submit any evidence that UCC controlled its customers' compounding, packaging, or marketing of their products. Therefore, under *Satterfield*, this Court must find that UCC is entitled to summary judgment as a raw materials supplier that did not supply a defective product, and was not involved in any of the named manufacturers' processes.

However, Plaintiffs argue that the issue is not about the sophistication of the named manufacturers, but rather the inadequacy of the warning provided by UCC to the named manufacturers. Hence, the Court must consider the interplay of UCC's assertion of the "sophisticated user" defense and the issue of adequacy of warning.

---

[37] *See Satterfield*, 2014 WL 2744687, at *3 (citing *Phillips*, 2005 WL 7084045, at *3 (citing 63 AmJur.2d *Products Liability* § 147 (2004)); *Sperry v. Bauermeister, Inc.*, 4 F.3d 596, 598 (8th Cir. 1993); *Childress v. Gresen Mfg. Co.*, 888 F.2d 45, 49 (6th Cir. 1989); *Walker v. Stauffer Chemical Corp.*, 19 Cal. App. 3d 669, 672–73, 96 Cal. Rptr. 803 (Cal. Ct. App. 1971)) (emphasis added).
[38] *Id.* (quoting *Phillips*, 2005 WL 7084045, at *3-4 (citing Restat. (Third) Torts: Prod. Liab. § 5 at reporter's note cmt. *e*)).

### 3. UCC's Reliance on the Named Manufacturers

In reviewing the application of the "sophisticated user" defense, the Court refers to the Supreme Court of South Carolina's decision in *Lawing v. Univar, USA, Inc.*[39] Although the factual circumstances and procedural posture are not identical to the case before this Court, *Lawing* is referenced for the principle that "a supplier may rely on an intermediary to provide warnings to the ultimate user *if the reliance is reasonable under the circumstances.*"[40] Thus, to determine whether the application of this defense is appropriate, the Court must decide whether UCC reasonably relied on the named manufacturers, to warn end users of the dangers associated with the Calidria it supplied.

In *O'Neal v. Celanese Corp.*,[41] the United States Fourth Circuit Court of Appeals (the "Fourth Circuit") concluded that a defendant supplier acted reasonably in relying on the, sophisticated user/employer to warn the plaintiff employee. The Fourth Circuit justified such reliance on the employer being experienced in that line of business, to such an extent that it knew or should have known the dangers

---

[39] *Lawing v. Univar, USA, Inc.*, 415 S.C. 209, 225–26, 781 S.E.2d 548, 557 (2015).

[40] *Id.* (citing Restatement (Second) of Torts § 388 cmt. *n*)) (emphasis added); *see O'Neal v. Celanese Corp.*, 10 F.3d 249, 251 (4th Cir. 1993) ("The sophisticated user defense is implicated in the situation in which A supplies a chattel to B, B in turn allows C to be exposed to the chattel, C is injured by exposure to the chattel, and C claims that A should be liable to C for A's failure to warn C of the danger.").

[41] *O'Neal*, 10 F.3d 249 (affirming the granting of a judgment notwithstanding the verdict and conditional new trial in favor of defendant where defendant established a sophisticated user defense as a matter of law and where plaintiff failed to establish proximate cause).

associated with the plant equipment at issue.[42]   In conducting its analysis surrounding the application of the "sophisticated user" defense under Maryland law,[43] the Fourth Circuit considered the following factors to determine whether the supplier reasonably relied upon the intermediary to warn users:

> (1) the dangerous condition of the product; (2) the purpose for which the product is used; (3) the form of any warnings given; (4) the reliability for the third party as a conduit of necessary information about the product; (5) the magnitude of the risk involved; and (6) the burdens imposed on the supplier by requiring that he directly warn all users.[44]

Although this Court refers to *O'Neal* for guidance, it does not apply the listed factors explicitly here because such factors were developed under Maryland law – not controlling in this case. Instead, the Court turns to *Bragg v. Hi-Ranger*,[45] where the South Carolina Court of Appeals (the "Court of Appeals") concluded that the court below properly charged the jury concerning the "sophisticated user" defense. Although *Bragg* was decided under a different procedural posture, the commentary surrounding the application of the "sophisticated user" defense is relevant to the Court's decision here. In *Bragg*, the Court of Appeals applied *O'Neal*, noting that the question is not whether the sophisticated intermediary had knowledge, but

---

[42] *Bragg v. Hi-Ranger, Inc.*, 319 S.C. 531, 550, 462 S.E.2d 321, 332 (Ct. App. 1995).
[43] *O'Neal*, 10 F.3d at 251 (citing *Kennedy v. Mobay Corp.*, 325 Md. 385, 601 A.2d 123 (1992), *aff'g* for the reasons stated in 84 Md. App. 397, 579 A.2d 1191 (1990)).
[44] *Id.* at 252 (quoting *Eagle–Picher Indus., Inc. v. Balbos*, 326 Md. 179, 604 A.2d 445, 465 (1992)).
[45] 319 S.C. 531, 550, 462 S.E.2d 321, 332 (Ct. App. 1995).

14

"whether the supplier . . . acted reasonably in assuming that the intermediary would recognize the danger and take precautions . . . ."[46]

Therefore, this Court focuses its analysis on whether UCC has established that no genuine issues of material fact exist about whether it was reasonable for it to rely on Georgia-Pacific, National Gypsum, U.S. Gypsum, and Armstrong to provide adequate warnings to end users. Here, UCC provided a myriad of documentation possessed by each manufacturer which indicates their awareness surrounding the uses and dangers of asbestos, and their knowledge of its application within their respective lines of work.[47] Further, UCC has also established that Armstrong sold a variety of flooring products during the relevant period that did not contain asbestos, and that Armstrong ceiling materials have never contained asbestos.[48] Accordingly, based on the unrefuted record, this Court finds that UCC could reasonably rely upon Georgia-Pacific, National Gypsum, U.S. Gypsum, and Armstrong to recognize the danger of using Calidria in their products, and that they were in the best position to take precautions and warn end users of the use and potential dangers of their products.

---

[46] *Bragg*, 319 S.C. at 550.
[47] *See* Def.'s Mot, Exhibits C, E, F, G, K, L, M; *see also* Def.'s Reply, Exhibit A. This position was unrefuted by Plaintiffs.
[48] *See* Def.'s Reply, Exhibits E, F. This position was unrefuted by Plaintiffs.

15

Moreover, this Court notes that because of its position as an unaffiliated supplier[49] and a lack of evidence in the record to suggest otherwise, UCC likely lacked the ability to identify, contact or warn end users of its customers' finished products. Therefore, this Court finds that UCC did not have a duty directly to warn the end users of its customers' finished products.

### 4. Adequacy of UCC's Warning to Named Manufacturers

Plaintiffs suggest that regardless of the status of the manufacturers in this case, summary judgment is inappropriate because the warnings that UCC did provide were inadequate. Plaintiffs contend that the "Toxicology Report" issued to manufacturers by UCC was inadequate. Specifically, Plaintiffs allege that the "Toxicology Report" presented customers with misleading information that provided false assurance regarding the safety of "asbestos" and "chrysotile asbestos."

However, because the Court finds that Georgia-Pacific, National Gypsum, U.S. Gypsum, and Armstrong were sophisticated users, it is not required to evaluate the adequacy of UCC's warnings – where UCC was not under any obligation to issue them in the first place. In *Phillips v. South Carolina State University*,[50] the Court of

---

[49] *See* Def.'s Mot. at 6 ("[UCC] did not participate in or control the manufacture or design of its customers' finished products, the subsequent sale and distribution of those products, or the product warnings that accompanied the finished products to the end users.").
[50] No. 2005-UP-320, 2005 WL 7084045 (S.C. Ct. App. May 12, 2005).

16

Appeals affirmed the lower court's granting of summary judgment in favor of the supplier defendant where there was no evidence that the product supplied was dangerous, *and* where it was undisputed that the sophisticated intermediary "received notice of the warning" regarding the component at issue.[51] Notably, the Court of Appeals specified that even if the supplier defendant had not provided a warning, it would still not be held liable, because "[c]omponent parts manufacturers generally have no duty to warn end users of the potentially dangerous uses to which their products may be put."[52] Thus, this Court also finds that even if UCC had not provided a warning to the named sophisticated users, it is not liable on Plaintiffs' failure-to-warn claim.

Accordingly, after construing all facts and reasonable inferences in a light most favorable to Plaintiffs, without indulging in speculation or conjecture, the Court finds that UCC's Motion for Summary Judgment on Plaintiffs' failure-to-warn claim is **GRANTED.**

---

[51] *Phillips*, 2005 WL 7084045, at *4.
[52] *Id.* (citing *Jacobs v. E.I. du Pont de Nemours & Co.*, 67 F.3d 1219, 1236 (6th Cir. 1995)).

## V. CONCLUSION

For the foregoing reasons, UCC's Motion for Summary Judgment is **GRANTED,** as to Plaintiffs' design-defect claim and as to Plaintiffs' failure-to-warn claim. Because of the Court's ruling on Plaintiffs' failure-to-warn claim, it need not address the individualized arguments of whether UCC ever sold production quantities of Calidria to U.S. Gypsum or whether Plaintiffs satisfied their shifted burden of proving that the Armstrong products used by Mr. Gibbs contained asbestos.

**IT IS SO ORDERED.**

_____
Sheldon K. Rennie, Judge